[No. 5373.  Decided February 28, 1905.]

SEATTLE LAND AND IMPROVEMENT COMPANY, *Appellant,*
v. CITY OF SEATTLE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—PARKS—DIVERSION TO ECONOMICAL
USE—LANDS HELD IN FEE AND PAID FOR FROM GENERAL FUND—
ABUTTING OWNERS. A city of the first class, being authorized to
acquire lands by purchase or otherwise and to dispose of the
same, and to establish, regulate, control or vacate parks, and hav-
ing acquired lands in fee for the purpose of a public park by the
right of eminent domain, may thereafter divert the same to an
economic use by the erection thereon of a city building, where
the lands appropriated were paid for by the city out of its general
fund, as distinguished from a restricted donation or conveyance
for park purposes, or from a purchase paid for by local assess-
ments levied upon the property specially benefited thereby; and
abutting owners can not object to such diversion.

Appeal from a judgment of the superior court for King
county, Bell, J., entered July 16, 1904, upon sustaining
a demurrer to the complaint, dismissing an action to en-
join certain use of lands appropriated for a public park.
Affirmed.

Byers & Byers, for appellant, cited: *Church v. Port-
land,* 18 Ore. 73, 22 Pac. 528, 6 L. R. A. 259; *Gilman v.
Milwaukee,* 55 Wis. 328, 13 N. W. 266; *Seward v. Or-
ange,* 59 N. J. L. 331, 35 Atl. 799; *State v. Laverack,* 34
N. J. L. 201; *Davenport v. Buffington,* 97 Fed. 234, 46
L. R. A. 377; *Rowzee v. Pierce,* 75 Miss. 846, 65 Am. St.
625, 40 L. R. A. 402; *San Francisco v. Itsell,* 80 Cal. 57,
22 Pac. 74; *Belcher Sugar Ref. Co. v. St. Louis Grain
El. Co.,* 82 Mo. 121; *Cummings v. St. Louis,* 90 Mo. 259,
2 S. W. 130; *Barney v. Keokuk,* 94 U. S. 324; *Trenor v.
Jackson,* 46 How. Pr. 389; *Chicago v. Ward,* 169 Ill. 392,
48 N. E. 927, 61 Am. St. 185, 38 L. R. A. 849.

*Mitchell Gilliam,* for respondents.

[1]Reported in 79 Pac. 780.

Root, J.—Appellant brought this action to enjoin the respondents from diverting the use of certain land to another purpose than that for which it is claimed said land was acquired by the city. The material facts are about these: The city duly enacted an ordinance with the following title:

"An ordinance providing for the condemnation and appropriation of certain real estate for the purpose of the construction of retaining walls and slopes thereon, and draining, bulk-heading, piling, surfacing, terracing, and otherwise improving the same, in order to protect certain streets, alleys and highways in the city of Seattle, and to prevent the same from being obstructed, and to use said property, after it is so improved, for a public park."

Pursuant to this ordinance, the city condemned the land in question, by appropriate proceedings in court. Thereafter, instead of using said premises for a public park, the city authorities decided to erect thereupon an "In-Town Terminal Sub-Station," to be used in connection with the city's lighting plant, which use, it is alleged, would be inconsistent with the enjoyment of said lands as a public park, and, in fact, would prevent them from being used as such. The complaint alleges that appellant purchased property directly opposite this proposed park, which it would not have purchased had it not been for the public declaration in said ordinance that the taking of such property was for the purposes of a public park. Respondents demurred to appellant's complaint, and the demurrer was sustained. Appellant elected to stand upon its complaint, whereupon the trial court made and entered a judgment of dismissal. Appeal is taken from said judgment.

Appellant contends that, inasmuch as the city stated in said ordinance that the condemnation and taking of said property was with the intention of using it ultimately as

a public park, said city has no right to use it for other
purposes—at least, not for economic purposes that would
prevent its use and enjoyment as a public park.

The ordinance contains no provision for the creation of
an assessment district to bear the expense of acquiring said
property, or for the payment of the same by means of an
assessment upon property which would be specially bene-
fited by the creation of a park out of the lands thus ac-
quired.    It will thus appear that the payment for said
land so taken must be from the general fund of the city.
Cities of the first class have power,

"To acquire, by purchase or otherwise, such lands and
other property as may be necessary for any of the corpo-
rate uses provided for by its charter, and to dispose of any
such property as the interests of the corporation may, from
time to time, require."    Bal. Code, § 739 subd. 3.

Such cities are also given power,

"To lay out, establish, open, alter, widen, extend, grade,
pave, plank, establish grades, or otherwise improve the
streets, alleys, avenues, sidewalks, wharves, *parks* and
other public grounds, and to regulate and control the use
thereof and to vacate the same."    Bal. Code, § 739, subd. 7.

It is doubtless the law that, where a person dedicates or
donates to a city a tract of land, with a restriction upon
its use—as for instance, where it is so dedicated or do-
nated solely for a park or a public street—the city can
not legally divert the use of such property to uses and
purposes inconsistent with the purpose of such grant; and,
in cases where a city has acquired property for the pur-
pose of a public park, and the payment thereof is made by
means of special assessments, levied upon neighboring
property specially benefited by reason of the acquiring
and using of said property for such purposes, that the own-
ers of said property, thus specially assessed, may in a

proper case, prevent such property from being used in a manner that would destroy its use and enjoyment for the purposes for which it was acquired.

But where property is taken, and paid for from the general fund, with the intention of using it for a certain purpose specified in the ordinance authorizing the taking, as was done in this case, the city, doubtless, has the authority to change said contemplated use to another and entirely different use, whensoever the needs and requirements of the city suggest.

In 2 Dillon, Mun. Corp. (4th ed.), § 651, the author says:

"As between the municipality and the general public, the legislative power is, in the absence of special constitutional restrictions, supreme, and so it is in all cases where there are no private rights involved. If the municipal corporation holds the full title to the ground for public uses, without restriction, the legislature may doubtless direct and regulate the purposes for which the public may use it. . . . In the absence of any restriction by contract or special restriction in the constitution, the power of the legislature over the use of public property—that is, its power to modify and regulate such uses—is undisputed, and so far as the public or municipality is concerned, it is, perhaps, quite unlimited."

In *Brooklyn v. Copeland*, 106 N. Y. 496, 13 N. E. 451, it was held that the legislature could relieve the city of the restriction, and authorize it to sell and convey property theretofore taken for park purposes. Lewis, Eminent Domain, § 596, says:

"Where a fee simple is taken, the weight of authority is that there is no reversion, but when the particular use ceases, the property may, by authority of the state, be disposed of for either public or private uses."

In *McNeil v. Hicks & Howell*, 34 La. Ann. 1090 the supreme court of Louisiana said:

"The doctrine was early declared by this court, that a municipal corporation may alienate or change the use and destination of public places with the consent and by the authorization of the sovereign power first obtained, whenever the public interest may require it."

An examination of the authorities cited by the respective parties hereto, and such others as we have been able to examine, shows that a clear distinction is observed between those cases where the *fee* of the property is acquired (by purchase, condemnation, or otherwise), and those cases wherein the city obtains merely an *easement;* also, between cases where the full purchase price is paid by the city from its general fund, and those cases where the property is *dedicated* or donated for some specific public use, or conveyed with some restriction, or where payment is provided by assessment upon neighboring property specially benefited by the contemplated use.

In the case at bar the city acquired the full and complete legal title in fee to this property, without restriction of any kind; and paid, so far as the record shows, the full value therefor from the general fund. It was not a dedication or donation, or a conveyance to the city with any limitations or restrictions. The city having thus acquired the property, and, in its wisdom, decided thereafter that the contemplated use should be changed, and that its welfare and necessities required a use for economic purposes, we are unable to find any authority authorizing the appellant to interfere with the respondents' actions in this direction. *Brooklyn Park Com'rs v. Armstrong,* 45 N. Y. 234, 6 Am. Rep. 70; *Curran v. Louisville,* 83 Ky. 628.

The judgment of the lower court is affirmed.

MOUNT, C. J., RUDKIN, CROW, and DUNBAR, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.