## EAST CHICAGO COMPANY *v.* CITY OF EAST CHICAGO ET AL.

[No. 21,349.   Filed February 4, 1909.]

1. MUNICIPAL CORPORATIONS.— *Creation of.*— *Powers.*— Municipal corporations are creatures of the state and their powers are expressly or impliedly granted by statute. p. 658.

2. SAME.— *Park Property.*— *Purchase.*—*Sale.*—Municipal corporations had, in 1897, the statutory power to purchase lands for park purposes (§3541 Burns 1901, cl. 45, Acts 1895, p. 180), and to dispose of same (§3541 Burns 1901, cl. 47, Acts 1895. p. 180). pp. 658, 659, 661.

3. SAME.—*Park Lands.*—*Conveyances.*—*Conditions Subsequent.*— Cities have the right to receive conveyances of lands for park purposes, conditioned upon the continued use thereof. for such purposes, and failing therein, the land to revert. p. 659.

4. SAME.—*Park Lands.*—*Trading for Other Lands.*—Cities had the power under §3541 Burns 1901, clauses 45, 47, Acts 1895, p. 180, to trade park lands for other lands to be used for such purposes. p. 659.

5. VENDOR AND PURCHASER.—*Estate on Condition Subsequent.*—*Possibility of Reverter.*—The purchaser, buying from a city lands held solely for park purposes, such lands reverting if used for any other purpose, and also buying from the city's grantor the possibility of reverter, becomes the owner in fee simple. p. 660.

6. MUNICIPAL CORPORATIONS.—*Title to Streets.*—*Dedication.*—Cities obtain no title to the streets, alleys, public squares and grounds, dedicated as such by the proprietor in laying out a town or an addition thereto. p. 660.

7. SAME.—*Sales of Park Lands.*—*Objections by Adjoining Owners.* —Persons living near, or owning lots near, a public park have no vested right in such park, and cannot complain of a sale thereof. p. 661.

From Lake Circuit Court; *Willis C. McMahan,* Judge.

Suit by the East Chicago Company against the City of East Chicago and others. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court (see 42 Ind. App. 383) under §1429 Burns 1908, Acts 1893, p. 29. *Reversed.*

*Johannes Kopclke, Winston, Payne & Strawn* and *Frederick Hack,* for appellant.

*George B. Sheerer* and *J. D. Kennedy,* for appellees.

MONTGOMERY, J.—Appellant brought this suit to quiet its title to lot twenty-five in block three in the city of East Chicago. It was alleged that this lot had been used for park purposes; that a majority of the legal voters of the city of East Chicago petitioned for the sale of said lot, and the common council of said city granted the prayer of said petition, directed and authorized the sale, and caused the lot to be conveyed to appellant by a deed duly executed by the mayor and attested by the clerk of said city, which deed was duly acknowledged and recorded in the office of the recorder of Lake county; that by virtue of said purchase appellant became the owner in fee of said lot, subdivided the same into twenty-four lots, executed and recorded a plat of such subdivision, and sold and conveyed by warranty deeds four lots out of said subdivision to certain named purchasers, who are now the owners thereof, and appellant owns the remaining twenty lots all in fee simple; that, notwithstanding such sale and conveyance, said' city is yet claiming some right, title and interest in said lot twenty-five adverse to plaintiff, which is a cloud upon its title and the title of its said grantees, etc. Redmond D. Walsh, as a taxpayer of the city, and John R. and Theodore Emery, as the owners of lots across the street from said lot twenty-five, who purchased upon the inducement that it was to remain the property of the city and be used for park purposes, were admitted, upon intervening petitions, as defendants and filed answers. A trial resulted in a finding and judgment against appellant.

The overruling of appellant's motion for a new trial is assigned as error. A new trial was demanded on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law.

The evidence was chiefly documentary and wholly without conflict, and established the following facts: On May 5, 1897, the Standard Steel & Iron Company conveyed lot twenty-five in block three to the city of East Chicago, for the purpose of a public park, and for no other purposes, with conditions to the effect that in case the property should be used for any other than park purposes, or any building should be erected thereon, other than an ornamental band stand, all rights acquired by the deed should cease, and the title revert to the grantor, its successors or assigns. On December 18, 1902, the Standard Steel & Iron Company conveyed to appellant all of its real estate in Lake county, Indiana, belonging to it, or in which it was in any way whatsoever interested, with all reversions, remainders, and all estate, right, title, interest, claim or demand whatsoever of said grantor in the premises, or any streets and public squares bordering upon or adjacent to the premises. The total vote cast by the two leading political parties in the city of East Chicago at the fall election in 1902 was 848, and the total number of votes cast at the last general election held in said city prior to January 4, 1904, was 1,100. Upon the last-mentioned date a petition was presented to the common council of said city, signed by 680 legal voters of said city, asking said council to sell or exchange said lot twenty-five, in use as a park, for the reason that its use for business purposes would be a greater benefit to the city than it was as a park, and that the purchase of a larger tract for park purposes would be better appreciated. At the same time appellant submitted to the common council an instrument in writing showing that it had succeeded to the rights of the Standard Steel & Iron Company in and to said lot twenty-five and all its other property, representing that said

lot was inadequate to meet the requirements of the city as a park, and proposing to convey to the city for park purposes a twenty-acre tract described, and block nine in another subdivision of the city, in exchange for said lot twenty-five. Thereupon the common council passed a resolution declaring such exchange advantageous to the city and its citizens, accepting said proposition, and authorizing and directing the mayor to execute to appellant, under the corporate seal of the city, a conveyance for said lot twenty-five upon the delivery to the mayor of a good and sufficient deed from appellant to the city of the property described in its proposition. The common council consisted of six members, five of whom were present, and upon the adoption of said resolution four voted "aye" and one "no." Appellant thereupon executed to the city conveyances for the tracts described in its proposition of exchange, which were accepted and ordered recorded, and the city of East Chicago duly executed to appellant a deed for said lot twenty-five, which was accepted and recorded.

The authority of the city of East Chicago to purchase and hold real estate for use as a park at the time of the transaction in question is found in the following statute: "To purchase, hold, or convey real estate for the purpose of constructing public buildings thereon, or using the same for a public park or other public purposes. And if designated for a public park, cemetery, water-works, or fair, such real estate may be purchased and held by said city, although lying without the limits of the corporation, and such city may by ordinance, provide for the protection thereof, and access thereto, and for the manner in which, and the persons by whom the same may be used and occupied, and any conveyance heretofore made of real estate to any such city for any of the purposes aforesaid, lying without the limits of such city, is hereby legalized and confirmed." §3541 Burns 1901, cl. 45, Acts 1895, p. 180.

The following provision is relied upon, as authorizing the sale of the park property to appellant: ''The common council of any city may upon a petition of a majority of the legal voters of such city sell any public square or public landing of such city, or part thereof, and convey the same by deed under the hand of the mayor and seal of such city, and any moneys arising from such sale shall be deposited in the treasury of such city, to be expended in the purchase of any other public square or public landing, and for the improvement of the same.'' §3541 Burns 1901, cl. 47, Acts 1895, p. 180. Both of these provisions were in force in 1897, when the conveyance of the park lot was made by the Standard Steel & Iron Company to the city of East Chicago. Appellees' contention is that the city held this property as trustee for the use of the public as a park, upon conditions subsequent that it should be devoted to no other purpose, and that no building other than an ornamental band stand should be erected thereon; that the city could not dispose of the property in violation of the trust, and that there had been no breach of the conditions, and hence no forfeiture and reversion to the original grantor, and the attempted sale was accordingly void. In the absence of express legislative authority upon the subject, the principle stated would apply and govern. A municipal corporation is created by the state, for the exercise of governmental functions, and its powers and duties are such only as are expressly prescribed by statute and such as are necessarily or reasonably implied for the accomplishment of the purposes of its creation. The General Assembly of Indiana has deemed it appropriate to grant in express terms, to cities of the class to which East Chicago belongs, the right to acquire, hold and dispose of property for park purposes. The authority to acquire property for a particular use ordinarily carries with it the right to agree upon the consideration and conditions of the con-

veyance. *City of Terre Haute* v. *Terre Haute Water-Works Co.* (1884), 94 Ind. 305; *Muncie Nat. Gas Co.* v. *City of Muncie* (1903), 160 Ind. 97, 60 L. R. A. 822.

The transfer of the park lot in controversy was made to the city with knowledge of the statutes quoted, and necessarily in subservience to the provisions thereof. The city was undoubtedly authorized to accept·a title conditioned upon the continued use of the property in a particular way, as well as one that purported to be absolute and irrevocable. The conveyance of this property to the city contemplated the possibility of the park's being devoted to other uses, and provided for a reversion in that event. The legislature manifestly anticipated conditions which would make it expedient for a city to dispose of an existing public square or park and procure another, and provided for such contingency. The right to exercise such power was hedged and guarded by the requirement of a petition to the common council by a majority of the legal voters of the city. When thus petitioned, the authority of the common council to sell and convey a public square is complete, and is 'broad enough to cover a fee-simple title, or such other title or interest as the city may have acquired in such property.

No question is raised by appellees on the ground that the sale was not made for cash, but in consideration of the conveyance of other property to be devoted to a like public use·and purpose. The law ordinarily regards the substance of a transaction rather than the form of procedure, and no reason occurs to us why the exchange of property, made as before shown, should not be considered a substantial·compliance with the requirements of the statute. *Nesbit* v. *Miller* (1890), 125 Ind. 106; *Woodward* v. *Semans* (1890), 125 Ind. 330, 21 Am. St. 225; 11 Am. and Eng. Ency. Law (2d ed.), 570.

It is our conclusion, therefore, that the sale and convey-

ance by the city, made in pursuance of the statute before quoted, and also at the instance of and in coöperation with appellant as the owner of the reversionary interest, vested in appellant a fee simple title to the lot in question.

It is clear that an existing or subsequently established municipal government acquires no title to streets, alleys, public squares and grounds dedicated as such by the proprietor in laying out and platting a town or an addition thereto; but as to such property the city or town government exercises only legislative and supervisory control for the benefit of the public. The duty imposed upon municipalities with respect to property so dedicated is, in general, to preserve, maintain and keep the same in condition for the use intended. No authority will be implied on the part of the city to abandon, sell or divert to other uses, such trust property to the injury or prejudice of the beneficiaries. Judge Dillon, in 2 Dillon, Mun. Corp. (4th ed.), §575, states the principle applicable to such property as follows: "Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real or personal, of the corporation, of a private nature, unless restrained by charter or statute; they cannot, of course, dispose of property of a public nature, in violation of the trusts upon which it is held, and they cannot, except under valid legislative authority, dispose of the public squares, streets, or commons." The legal title to the park lot was vested in the city, subject to the limitations mentioned in the deed, and the sale and conveyance thereof were not made by virtue of any incidental or implied power, but in pursuance of express legislative authority.

The remaining question is whether this statute, authorizing sales of public squares and the investment of the proceeds in other like property, violates any constitutional right of appellees Emery and Emery, as the owners of property

abutting upon the opposite side of a street attiguous to such square or park.

The legislature has the power to authorize the discontinuance of parks and the sale of park lands, the fee of which is in the city, and, when in so doing no private property is taken, such legislative authority to surrender or extinguished public rights cannot be questioned. *Riggs* v. *Board, etc.* (1873), 27 Mich. 262; *Brooklyn Park Com.* v. *Armstrong* (1871), 45 N. Y. 234, 6 Am. Rep. 70; *Seattle Land, etc., Co.* v. *City of Seattle* (1905), 37 Wash. 274, 79 Pac. 780.

It is inevitable that a tract of ground once intended for and devoted to a particular public use may, from the growth of the city and the changing of conditions, become ill-suited to such use. Public convenience, interests and necessities may make a change of site imperative, and the people most concerned may be practically unanimous in demanding it, and to hold that the legislature may not validly authorize an abandonment or sale of public grounds in any case, would be to strip the State of one of the inherent and essential attributes of sovereignty. The owner of private property in the vicinity of such public square, whose means of ingress and egress are not destroyed or affected, has no vested right in the continued use of such property for public purposes. The loss, if any, sustained by such adjacent property owners by the abandonment or relocation of the public square is not direct, but merely consequential, and is not within the protection of the constitutional provision which forbids the taking of private property without compensation. Counsel for appellees have not pointed out any specific constitutional guaranty which has been violated by the sale and exchange of the park lot in controversy, and we are unable to perceive wherein the constitutional rights of appellees have been violated, but hold the statute authorizing the sale in question valid as against any claims or objections advanced. *Armstrong* v. *Board,*

*etc.* (1836), 4 Blackf. 208. *Swartz* v. *Board, etc.* (1902), 158 Ind. 141. *Clark* v. *City of Providence* (1888), 16 R. I. 337, 15 Atl. 763, 1 L. R. A. 725; *Mowry* v. *City of Providence* (1889), 16 R. I. 422, 16 Atl. 511. This view of the law fully sustains the sale of the park lot, and renders the decision of the trial court upon the uncontradicted facts contrary to law.

The judgment is reversed, with directions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.