H. L. THOMAS, W. C. CALL, T. A. WOLFE, HARRY E. EULER and W. L. WEISENBORN v. BUCHANAN COUNTY, MISSOURI, and HARVEY J. BOYLE, WILLIAM P. ALLISON and FRANKLIN P. DUNN, Judges of the County Court of Buchanan County, Appellants.—51 S. W. (2d) 95.

Court en Banc, June 3, 1932.

*Mayer, Conkling & Sprague* for appellants.

630

*W. J. Boyd* for respondents.

ELLISON, J.—The respondents, as taxpaying citizens, brought this suit against Buchanan County and the three judges of the county court to enjoin the issuance and sale of certain "tax anticipation" notes under Laws 1931, page 292, and to restrain the assessment, levy and collection of taxes to pay the same, on the ground that the aforesaid act is unconstitutional. The defendants filed answer admitting that they intended to issue notes under the law but denied that it was unconstitutional. The respondents then filed a motion for judgment on the pleadings and the cause was submitted to the trial court thereon. The court held against the constitutionality of the law and the correctness of that ruling is challenged on this appeal taken by the defendant county and county judge. In other words, the only questions presented are constitutional questions.

The contention of the respondents was and is that said Act of the General Assembly contravenes the following provisions of the State Constitution, for the following reasons:

(a) that it is double and contains two unrelated subjects; and that these are not clearly expressed in its title; all in violation of Article IV, Section 28;

(b)   that it is a local and special law applying only to Buchanan County; and attempts to regulate the affairs of that county and to create offices therein and to prescribe the powers and duties thereof, whereas the general laws of the State are and can be made applicable to the matters and situations sought to be dealt with by the act; all in violation of Article IV, Section 53, subdivisions 2, 15 and 32;

(c)   that it permits the county court to issue tax anticipation notes during a given year in an amount which, with other existing indebtedness, will exceed the income and revenue provided for that year without a vote of the people; in violation of Article X, Section 12.

The title of the act is as follows:

''An act to provide that the county court of counties now or hereafter having a population of not less than ninety-five thousand inhabitants and not more than one hundred and fifty thousand inhabitants, as shown by the last preceding decennial national census, may, under such conditions and upon the terms prescribed in this act, issue negotiable notes payable in not more than one year to be paid out of current revenue of the year, providing for a board of estimates to estimate the revenue, and prescribing the duties of the board, providing for the sale of the promissory notes and the registry thereof; and providing that the county court shall provide for the purchase of all supplies, including all printing, and providing that any purchase of supplies or having any printing or advertising done otherwise than as provided in this act, shall be unlawful, and providing a penalty for the violation of the act, with an emergency clause.''

The act contains fifteen sections and applies only to counties ''Which may now or hereafter have a population of not less than 95,000 inhabitants and not more than 150,000 inhabitants.''   The first ten sections cover the issuance of the so-called ''tax anticipation'' notes.   It is provided that the county court of any county falling in the class designated may ''issue negotiable notes payable in one year or less from the date of issue out of the current county revenues to be derived from the taxes of the year in which said notes are issued; but where taxes are levied for special purposes the notes issued against the anticipated revenues derived therefrom shall bear a statement that the said notes are to be paid out of said special revenues.''

The notes can be issued only after the anticipated revenue for the year has been estimated by the three judges and the clerk of the county court, sitting with the county assessor, collector and treasurer, as a board of estimate; ''and when issued shall be in proportion to the total estimated revenue as follows: not to exceed ten

per cent in any month nor fifty per cent before June 1st of any year, and not more than an additional ten per cent in each of the months of June, July, August and September and the total of such notes shall not exceed ninety per cent of the total anticipated revenue in any one year; but if said notes, or any thereof, shall not be issued within or at the times so fixed they may be subsequently issued to the amount so limited.''

It is further provided that the faith and credit of the county shall be deemed pledged for the payment of the notes and interest (6 per cent per annum) in the manner and from the funds specified in the act; and that the monies derived therefrom ''shall be used solely for the payment of county warrants issued for the payment of the expenses and obligations of the county of the year in which said notes are issued,'' any surplus remaining to be applied to the payment of maturing anticipation notes or transferred to the various county funds according to law.

So much for the first ten sections of the act. The remaining five sections in effect require the judges of the county court on or before February 1 of each year to make up a budget, determining the kind and quantity of supplies which will be required by the several county officers during the year, including county printing and advertising; and to contract for said supplies with the lowest and best bidder after three weeks published notice and the reception of sealed bids. When the supplies are such as cannot be contracted for at a saving to the county, they may be purchased for the officer requiring them on a special order of the county court. All county and township officers are forbidden to purchase any supplies not thus contracted for or ordered; and the act declares it to be, unlawful for the county court ''to draw, or authorize the drawing of, any check or county warrant, or other order for the payment of money for any supplies for any county officer,'' which were not purchased as in the act provided.

The act closes with an emergency clause reciting the law shall take effect immediately, ''the financial condition of such counties making it necessary that such notes be issued and such expenditures be controlled.''

The foregoing summary is sufficient for the purposes of this case. For a complete statement of the law in all its details the act will have to be read.

■ I. Taking up the contentions made by respondents in their order. The first is that the act does not conform to the requirements of Article IV, Section 28 of the State Consitution. We can see no infirmity in the title of the act. It fairly reflects its contents, and counsel for respondents do not seriously contend otherwise. The point

they make is that the act is double; that it deals with two separate and unrelated subjects: (1) borrowing money on tax anticipation notes; (2) the purchase of supplies and printing for the county offices by contract. In dealing with this contention, we are to remember that when confronted by such questions "this court has uniformly given a broad and liberal construction to" the constitutional provision, and that "when all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single." [State v. Ward (Mo. Sup.), 328 Mo. 658, 40 S. W. (2d) 1074, 1076.]

It is true the first ten sections of the act deal with the issuance of tax anticipation notes, and the last five sections with the budgeting of county expenses for supplies and the purchase thereof by contract from the lowest and best bidder. But have not these two subjects a natural relation *in fact,* and is not that relation shown by the act? Counsel for certain of the respondents concede the two matters—issuing notes and buying supplies—could have been combined under and as a single subject if the title and body of the act had provided for the issuance of the tax anticipation notes *for the purpose* of paying for supplies. But they say the act as it stands expresses no such purpose and permits the county to issue notes and borrow money without using it to purchase supplies, and to buy supplies by contract and pay for them without issuing notes.

We do not think this is sufficient to demonstrate the act is double. Buying supplies and obtaining funds to pay for them are not incongruous matters. They are very much related; and the tax anticipation note proceeds are at least made available for that purpose. The issuance of such notes to finance the county's needs, including supplies, and regulation of the purchase of supplies are functions having a natural relation in that they provide a means of obtaining money and making it go as far as possible; and this is true even though supplies may be bought and paid for out of revenues obtained from sources other than the notes, for in either event the economies effected result in a reduction of the general financial burden of the county which the note proceeds must bear somewhere along the line.

A case somewhat in point is Lynch v. Murphy, 119 Mo. 163, 171, 24 S. W. 774, 776. There, Laws 1893, page 150 and Laws 1891, page 128 were assailed as unconstitutional because duplicitous. The title of the first mentioned act, which recites the title of the other, was as follows: "An act to increase the state dramshop license, and to change the distribution of the county dramshop license by amending section 7 of an act entitled 'An act to regulate the sale of intoxicating liquors in the original packages or otherwise.'"

Both acts provided a specified portion of the revenue derived by each county from dramshop licenses should be set apart as a special road fund and distributed between the various road districts in the county according to mileage of public roads. It was contended the matter of providing and apportioning revenue for road purposes was a separate, distinct subject having no connection with the regulation of dramshops, but this court said "the disposition of the tax thus collected in that way is germane to the title of the act." So in the instant case control of the disbursement of money for supplies, which is or may be derived from the tax anticipation notes provided for, constitutes a single subject.

Furthermore, in our opinion the face of the act inferentially shows it was in legislative contemplation that the money obtained from the sale of the notes would or might be used in part to pay for supplies. It is a matter of common knowledge that a very substantial portion of every county's financial outlay is so spent. Section 10 of the act provides the notes can be used only to pay warrants for county expenses and obligations; Section 12 defines the word supplies as including "every article or thing for which payment may by law be required to be made by the county," including advertising and printing; Section 14 says no warrants shall be issued for supplies except such as shall have been contracted for or ordered in obedience to the requirements of the act; and Section 15 declares an emergency exists because the financial condition of the counties covered by the act makes it necessary that such notes be issued and county expenditures controlled. This declaration amounts to an express legislative affirmation that the issuance of the notes and the regulation of county expenditures for supplies are connected and necessary steps toward proper system of fiscal management.

Respondents grant the motive or *object* of the law may have been to ameliorate the financial condition of the counties covered thereby, but they say the Constitution requires every legislative bill to have a single *subject*. They draw a distinction between the object and the subject of a law, saying the latter refers to "the matter treated of; the theme or topic," or, in other words, "the things talked about in the act," citing McNeely v. So. Penn. Oil Co., 52 W. Va. 616, 62 L. R. A. 562, 576, and other cases. It is true some underlying motive not expressed or disclosed in a legislative act cannot be treated as the subject of the act. But as we have said, the act here under consideration not only discloses but actually states its ultimate purpose to improve the financial condition of the counties affected, by the means set out therein.

Respondents further remind us the main object of the Constitution in forbidding the enactment of laws having more than one subject is to prevent "log-rolling" and to insure that each separate subject will be dealt with on its own merits, citing State v. Burgdoerfer, 107 Mo. 1, 19, 17 S. W. 646, 651. And they make the point that at the passage of the act here involved some of the legislators may have been in favor of authorizing the issuance of tax anticipation notes but opposed to buying supplies by contract, and other legislators may have taken a reverse position; and that by combining the two matters in one bill all these legislators were coerced into voting for the whole measure whereas one or both parts of the law might have been rejected if separately submitted. That probably is more or less true of many bills. ■ But the law does not require each separate legislative thought to be embodied in a different bill, when they have a natural connection with each other. [Lynch v. Murphy, supra, 119 Mo. 1. c. 169, 24 S. W. 1. c. 775, 776; State v. Ward, supra, 328 Mo. 658, 40 S. W. (2d) 1. c. 1076.] Our Public Service Commission law enacted in 1913 with its numerous provisions scattered through 140 sections, the Motor Vehicle Act and Highway Commission law passed in 1921, may be cited as familiar examples of this fact, along with many others.

Going back to the title, if the body of the act, expressly as well as by reasonable inference, discloses an intention to deal with matters all falling under the subject and central thought of fiscal management of the counties' affairs, and as a means to that end—as we have held it does—then by the same token, the title of the act, which fairly reflects its contents and refers to the emergency clause, should be similarly construed.

■ In this connection part of the respondents call attention to the fact that the title of the act designates the counties to which it applies as those "having a population of not less than ninety-five thousand inhabitants, and not more than one hundred and fifty thousand inhabitants, as shown by the *last preceding decennial national census*" (italics ours) whereas the body of the law omits all reference to the census in setting out the population limits aforesaid. It is argued the title cannot be read into the text of the act and that under the latter counties to be classified by their *actual* population as locally determined, so, notwithstanding the petitions of all the respondents allege and the answers of appellants thereto admit, Buchanan County has a population between 95,000 and 150,000 according to the last Federal census, respondents nevertheless say the fact thus established by the pleadings does not bring the case within the act because there is no showing as to the actual population. This position we think is clearly untenable. The law is well

established that in construing a statute the title may be considered. [Glaser v. Rothchild, 221 Mo. 180, 212, 120 S. W. 1, 12, 22 L. R. A. (N. S.) 1045, 17 Ann. Cas. 576; Straughan v. Meyers, 268 Mo. 580, 587, 187 S. W. 1159, 1161; In re Graves, 325 Mo. 888, 896, 30 S. W. (2d) 149, 151-2; 36 Cyc. p. 1133; 25 R. C. L. sec. 267, pp. 1033-4.] The body of the act not stating how the population is to be determined, undoubtedly the title may be resorted to in ascertaining the legislative intent.

■ II.  The next point made by certain of the respondents is that the law is local and special in violation of subdivisions 2, 15 and  32 of Section 53, Article IV of the Constitution, in that it singles out Buchanan County and attempts to regulate its affairs, creates a special board of estimate, and makes the county court a purchasing agent.  It is true the only county in the State which, at this time, has a population between 95,000 and 150,000 is Buchanan County.  But this does not make the law local, because the act applies as well to all counties which may hereafter have that population.  In other words, the class is fixed, but the counties that fall within it may change as their population fluctuates.  That such legislation is not local is established by numerous decisions of this court: Davis v. Jasper Co., 318 Mo. 248, 253, 300 S. W. 493, 495; State ex rel. Moseley v. Lee, 319 Mo. 976, 993, 5 S. W. (2d) 83, 90.

These same respondents also assert the classification fixed by the law is arbitrary and unreasonable; but they merely state that as a conclusion and give no reason.  The presumptions are all in favor of the validity of the act, and the burden is on him who maintains the contrary to point out wherein the classification is unreasonable. As said in a recent banc decision, State ex rel. Hollaway v. Knight, 323 Mo. 1241, 1249, 21 S. W. (2d) 767, 770, "it must be made to appear beyond a reasonable doubt that there are no distinctive cirsumstances" justifying the classification.

■ III.  The next assignment is that the act violates Section 12 of Article X of the Constitution in that it permits the county court to issue tax anticipation notes during a given year in an amount which, with other existing indebtedness, will exceed the income and revenue provided for that year without a vote of the people.  Respondents' theory on this point is twofold.  First they say the act authorizes a county coming within the class created by it to issue tax anticipation notes up to ninety per cent of the anticipated revenue for a given year, and does not forbid the county from being indebted at the same time on county warrants.  The gist of the contention is that a county might issue notes up to ninety per cent of its anticipated revenue although it already had out-

standing warrants in an amount which, with the issued notes, would exceed the constitutional limit.

This contention is not well founded because Section 12, Article X of the Constitution is self-enforcing and must be read into the act. [State ex rel. Audrian County v. Hackmann, 275 Mo. 534, 540, 205 S. W. 12, 13; State ex rel. City of Jefferson v. Hackmann, 287 Mo. 156, 166, 229 S. W. 1082, 1085; State ex rel. City of Sedalia v. Weinrich, 291 Mo. 461, 468, 236 S. W. 872, 874.] This can be done without defeating the spirit and purpose of the law, or, indeed, deviating from its provisions. In authorizing the issuance of tax anticipation notes its terms are permissive, not mandatory, and the act merely fixes a maximum for the notes of ninety per cent of the anticipated revenue for the year. It is clear the law contemplates notes may be issued although prior warrants for the year are outstanding, and warrants may also be issued subsequent to the issuance of the notes. But there is nothing in the act saying tax anticipation notes must, or even may, be issued to an amount which, with existing indebtedness, will exceed 100 per cent of the anticipated revenue for the year, or that after the ninety per cent in notes have been issued, warrants may be issued for more than the remaining ten per cent which would bring the indebtedness up to the constitutional limit. Laws with substantially the same provisions, applying to counties of between 200,000 and 600,000 population, have been in force in this State since 1921, Laws 1921, page 275, Laws 1925, page 168, Sections 7692 to 7702, Revised Statutes 1929; and to counties of between 70,000 and 90,000 since 1925, Laws 1925, pages 175, 176, Sections 2095 to 2110, Revised Statutes 1929. The last mentioned statutes are almost identical with the act attacked in this case. We cannot overthrow all these laws merely because they contain no express restriction limiting the total indebtedness of the counties each year, including tax anticipation notes, to the anticipated revenue for that year.

The other contention presented by respondents is that the act gives the county court "an unrestrained license" to issue anticipation notes "regardless of necessity." In other words the county court can issue notes and borrow money before there is any indebtedness to be paid with it. It is said this would make the county a borrower, put it on a credit basis, and take it away from the cash system, contrary to the intent and purpose of Section 12, Article X of the Constitution as interpreted in earlier cases. We see nothing in this section forbidding the enactment of State laws authorizing counties to borrow money so long as the indebtedness does not exceed the constitutional limit. Cases which say Sections 11 and 12 of Article X of the Constitution put the counties of the

State on a cash basis, mean merely that the indebtedness contracted in any year shall not exceed the anticipated revenue for that year. [State ex rel. Clark County v. Hackmann, 280 Mo. 686, 698, 218 S. W. 318, 320.]

Being of the opinion that the several attacks on the statutes involved are not well grounded, for the reasons herein given, the judgment of the court below is reversed. All concur.