State of Missouri at the Relation of The State Building Commission and Guy B. Park, Dwight H. Brown, Richard R. Nacy and Lloyd W. King, constituting a majority of Members thereof, Relators, v. Forrest Smith, State Auditor.—81 S. W. (2d) 613.

Court en Banc, April 8, 1935.

*John D. McNeely* for relators.

*Roy McKittrick*, Attorney General, for respondent; *Max Wasserman* of counsel.

LEEDY, J.—Original proceeding by mandamus to compel respondent, the State Auditor, to draw his warrant on the State Treasurer, chargeable to the State Building Fund, in payment for sundry articles of equipment ordered and approved by relator, State Building Commission.

Upon the filing of relators' application for the writ, respondent, by stipulation, waived the issuance of the alternative writ and agreed that relators' application should be taken as and for such writ, and filed his return thereto. Whereupon, relators filed what is denominated a "motion for judgment notwithstanding respondent's return,"

reciting "that the allegations in said return do not constitute a lawful reason why said warrant should not be drawn." We look, therefore, to the facts stated in respondent's return as the ultimate facts of the case.

Involved here are varying quantities of seventeen separate and distinct items or articles of equipment, all portable, and not such as, when installed, become appurtenances or fixtures of the building. They are divided into classifications, as follows: (1) Furniture and fittings; (2) Food service; (3) Laundry; (4) Clinical, and (5) Industrial. The following units are typical of the several classifications mentioned, and will serve the purposes of this opinion without enumerating them all at length: (1) Tubular steel chairs, bedside tables, wheel chairs, hospital chart files; (2) Knives, forks and spoons; (3) Electric irons, canvas baskets; (4) Colonic irrigation outfit; (5) Forge, hand drill.

A constitutional amendment authorizing the bond issue in question was submitted by resolution of the Fifty-seventh General Assembly, Extra Session (Laws of Missouri, Ex. Sess., 1933-1934, p. 174), and adopted at a special election. The history of the bond issue, including the pertinent provisions of the constitutional. amendment and the statute enacted in pursuance thereof, will be found narrated in an opinion of this court, by GANTT, J., in State ex rel. v. Smith, Auditor, 335 Mo. 840, 74 S. W. (2d) 27, wherein the validity of the bonds was sustained. It may be here stated that the constitutional amendment, declared that the bonds were authorized "for the purpose of repairing, remodeling or rebuilding, or of repairing, remodeling and rebuilding *State buildings and properties* at all or any of the eleemosynary institutions of this State, for building additions thereto and additional buildings where necessary." But it further expressly provided, "The proceeds of the sale of the Ten Million Dollars ($10,000,000) of bonds herein authorized shall be expended for the purpose of repairing, remodeling or rebuilding any of the *public buildings* of the State of Missouri devoted to eleemosynary and penal purposes, and for building additions thereto, and additional buildings where necessary." (Italics ours.) [Constitution, Art. 4, sec. 44d.]

It is a provision of Section 5 of the statute above mentioned which, by the record and briefs in this case, we are asked to construe. It reads as follows: ". . . All improvements, repairs or additions which may be made to any of the state eleemosynary or penal institutions under this act, shall be of fireproof construction throughout, and shall be provided with proper heating, lighting and ventilating facilities *and with the most modern approved* sanitary arrangement and *equipment*." (Italics ours.) [Laws of Missouri, Ex. Sess., 1933-1934, p. 110.] It is the contention of relators that the word "equipment" as used in the italicized portion of the above-

quoted act embraces items of the character in question, because the term is to be taken in its plain, ordinary and usual sense. [Sec. 655, R. S. 1929.] On the other hand, the respondent, in his brief, says: ''The serious question in this case is as to whether the word 'equipment' . . . is to be construed in its plain, ordinary and usual sense so as to provide all the furnishings usual and necessary for the operation of the penal and eleemosynary institutions. . . . That the term 'equipment' is not only to be interpreted as reflected by the entire enactment and sentence in which it appears, but even more strictly to the phrase of which it is a part. The term 'equipment' clearly modifies 'sanitary arrangements' and we submit that what the Legislature had in mind was sanitary equipment, and not equipment as the term is generally defined when standing alone.'' Obviously, the question tendered by the parties is one of statutory construction.

▋ So much for the case as made by the pleadings and briefs. Were we to hold that the term ''equipment'' as used in the statute is to be construed in its usual and ordinary sense, it would admittedly include the items in question, and our alternative writ would have to be made permanent, if decided on the statute. But if a proper construction of the restrictions placed upon the purposes by the constitutional amendment excludes equipment in its general and ordinary sense, an entirely different result would necessarily follow. It is elementary that the statute could not authorize an expenditure out of the proceeds of the bond issue not sanctioned by the constitutional amendment itself. In other words, the purposes for which the statute directs expenditures can be no broader than the restrictions placed thereon by the constitutional amendment. ▋ And so in the view we take of it, it is upon the meaning of the words employed in the Constitution rather than the peculiar wording of the statute, that the case must turn. ''Being possessed of the cause, and having the express right to determine constitutional questions, undoubtedly we have inherent power to decide them whenever necessary to a proper disposition of the case presented. . . . And . . . this court may decide such (constitutional) questions when inherently involved in the determination of the case, although they have not been raised as orderly procedure requires.'' [Ex parte Bass, 328 Mo. 195, l. c. 201, 40 S. W. (2d) 457.] It is manifest, therefore, that the cases ruled in other jurisdictions are of negligible value because of the fact that it is almost, if not quite, impossible to find words used in the organic laws of other states which are even substantially like the language of our own Constitution. [State ex rel. v. Orear, 277 Mo. 303, 210 S. W. 392.] For like reasons, it would serve no useful purpose to review the Missouri cases construing the purposes of other bond issues under varying constitutional and statutory authorization. We mention only a few:

In Meyering v. Miller, Mayor, 330 Mo. 885, 51 S. W. (2d) 65, there was under consideration an ordinance of the city of St. Louis submitting a bond issue to the voters, which set forth the purposes for which the proceeds of the bonds should be used in the following language: "For the acquisition of land and the construction of additions to and extensions and equipment of public hospitals and institutions for the care of delinquents and the indigent tubercular, insane, feeble-minded, infirm, and sick patients." Out of the proceeds of the sale of the bonds so voted, the city proposed to erect an entirely new hospital located more than four miles from existing hospitals, and it was contended that this would be a misappropriation and misapplication of the funds. It was held that the language employed authorized the erection of new and separate hospital units, as well as increasing the size of existing hospitals.

In our search, we found a case decided by the United States Circuit Court of Appeals for the Eighth Circuit, Midland Special School District v. Central Trust Co., 1 Fed. (2d) 124, which, upon a cursory examination, seemed to at least give color to the claim that the proceeds of a bond issue for the purpose of "erection, alteration or improvement of (school) *buildings*" might be expended, in part, in purchasing equipment. In that case the court said: "In determining what is 'equipment' we should have clearly in mind the subject which is being equipped. In this case it was a schoolhouse, and we think a schoolhouse would be in modern times incomplete without many of these things commonly termed 'equipment.' In our opinion, the expression, *'the erection, alteration or improvement of such buildings' (school buildings)*, would fairly include many things which are commonly called 'equipment.' " (Italics ours.) But upon an analysis of the case, it is perfectly clear that it is no authority for the proposition with which we are confronted.

In Meyer v. Kansas City, 323 Mo. 200, 18 S. W. (2d) 900, the court en banc held that proceeds of a bond issue "for the construction, improvement and equipment of municipal docks and wharves" could not be expended for the purchase of a site on which to build or construct such docks and wharves, the court saying: "Any other interpretation of the proposition cannot be made without judicial legislation, which would necessitate the interpolation of language to this effect, 'for a site' or 'to procure a site.' " However, it was pointed out that eight propositions were submitted to the voters, in three of which (the establishment of an air port; the construction of a city hall; and a municipal auditorium) it was expressly provided that portion of the amounts appropriated were to be applied to the purchase of a site for the establishment of the contemplated improvement. "In each of these it is evident from the nature of the proposed improvement that it could not be established without a site therefor first having been procured. Despite

this apparent fact and the consequent implied power of the city to purchase the sites, it was prescribed that a portion of each of the appropriations in the cases referred to should be used for such purpose.'' [l. c. 202.]

There is a well-settled rule applicable to a grant of power to a corporation, municipal or otherwise, recognized in this State, and elsewhere, that if any doubt arises out of the use of words employed, it is to be resolved in favor of the public and in limiting the expenditures of the appropriation to the express terms for which it was made. [Meyer v. Kansas City, supra.] But can it be said to be doubtful as to whether equipment of the character hereinbefore described comes within the purposes of a bond issue to ''repair, remodel or rebuild public *buildings* devoted to eleemosynary and penal purposes, and for building additions thereto, and additional buildings where necessary?'' We think not. There is nothing in the language used to indicate an intention on the part of the voters to authorize the expenditure of the bond money for the purposes in question, and we accordingly hold that equipment of the character mentioned does not come within the terms of the constitutional amendment. Our alternative writ having been improvidently issued, should be quashed. It is so ordered. All concur.