Mary Purcell **KIRKWOOD** and Joseph A. Kirkwood, for and on behalf of themselves and all others similarly situated and interested, Appellants,

v.

**CITY OF ST. LOUIS**, a municipal corporation, and **V & M** Contracting Company, a corporation, Respondents.

No. 48449.

Supreme Court of Missouri,

Division No. 2.

Dec. 11, 1961.

Joseph A. Kirkwood, St. Louis, for appellants.

Thos. J. Neenan, City Counselor of the City of St. Louis, Aubrey B. Hamilton, Assoc. City Counselor, St. Louis, for City of St. Louis.

Sylvan Agatstein and Shifrin, Treiman, Agatstein & Schermer, St. Louis, for respondent, V & M Contracting Co.

STOCKARD, Commissioner.

Plaintiffs brought this action to enjoin the City of St. Louis from constructing a highway through a portion of a public park and to challenge the validity of the municipal bonds issued to pay for said highway. After a hearing the trial court dismissed the petition and plaintiffs have appealed.

Located within the western central portion of the City of St. Louis is a public-owned rectangular-shaped tract of land consisting of 1,380 acres known as Forest Park. The city proposes to construct the Rock Island Expressway, a four-lane highway, across the northeast corner of the park to expedite the rapid movement of vehicular traffic from the downtown area of the city to the western city limits. Appellants are residents and taxpayers of the City of St. Louis who own land abutting the park, and they contend that the construction of the expressway across the corner of Forest Park will constitute an unauthorized and illegal diversion of park land from park purposes.

By reason of its size and location in relation to the business and residential areas of metropolitan St. Louis, Forest Park is a barrier to through traffic. The movement of traffic through the park, particularly in rush hours, is heavy, congested and slow. The city is engaged in constructing in an area east of Forest Park what is known as the Mill Creek Development Project which will result in a substantial increase in traffic through Forest Park if it is not otherwise diverted. The Rock Island Expressway, as proposed, enters the park on the east side near the northeast corner by passing beneath Kingshighway Boulevard, it then runs in a northwesterly direction and follows generally the route of an existing railroad track, and leaves the park on the north side under Lindell Boulevard. It will occupy approximately six acres of park land.

The City of St. Louis devoted much effort and expended substantial sums of money in the study of its traffic problem. The location of the Rock Island Expressway was first determined in 1948 as the result of a comprehensive study. The plan was approved that year by the city plan commission. The evidence clearly establishes that the construction of the Rock Island Expressway where proposed will free or substantially reduce heavy through traffic now using the narrow winding park drives, prevent or at least substantially reduce a traffic bottleneck at the park, reduce or eliminate an anticipated increase in park traffic resulting from the Mill Creek Development Project, and provide a presently needed modern highway for the rapid mass movement of east-west vehicular traffic. As may be expected in every such situation, there are some who do not agree with the proposed location of the Rock Island Expressway, and possibly some who do not agree with its need. However, those who are charged by law with the duty and are vested with the discretion of determining the location of the expressway have made their decision in the matter, and it cannot be said, assuming the legal authority exists for the expressway to cross the northeast corner of Forest Park, that they have acted unreasonably or arbitrarily. In fact, we do not understand the plaintiffs to so contend.

The source of title of the City of St. Louis to the land constituting Forest Park stems from an act of the legislature of Missouri, Laws of Missouri 1874, p. 371, which created the park, defined its boundaries, and authorized "the county court of St. Louis county * * * to purchase or condemn all the lands embraced within said boundaries, for the purposes of said public park." Title to the land affected by the expressway was obtained by condemnation. See County Court of St. Louis County v. Griswold, 58 Mo. 175. The decree or judgment in condemnation is not in the record, but the parties stipulated that "the Circuit Court of the County of St. Louis, Missouri, did find and decree that the fee to all of the said real estate * * * was in the County of St. Louis and the people thereof." In 1876 the City of St. Louis ceased to be a part of

St. Louis County, and the "Scheme for the Separation of the Governments of St. Louis City and County" provided that "All the * * * public parks and property of every character and description heretofore owned and controlled by the County of St. Louis within the limits [of the city] as extended * * * are hereby transferred and made over to the City of St. Louis."

The cases of this and other jurisdictions have established as a general rule that the extent to which the use of park property may be changed is governed, at least to some extent, by a consideration of the manner in which the property was acquired. That is, whether the land was obtained by dedication for park purposes by the owner, or by purchase or condemnation by the municipality. 39 Am.Jur. Parks, Squares, and Playgrounds § 21; Annotation, 18 A.L.R. 1247, 63 A.L.R. 485, 144 A.L.R. 488. It is generally held that if a dedication of property for public use is by a private party for a specific or defined purpose, neither the legislature nor a municipality has any power to authorize the use of the property for any purpose other than the one designated. 26 C.J.S. Dedication § 65; Cummings v. City of St. Louis, 90 Mo. 259, 2 S.W. 130; Price v. Thompson, 48 Mo. 361; Rayor v. City of Cheyenne, 63 Wyo. 72, 178 P.2d 115, 117; Hyland v. City of Eugene, 179 Or. 567, 173 P.2d 464. However, where a park is established by statutory authority, or when a municipality purchases land and establishes a park thereon, the uses to which it may be put are much broader than where the land is dedicated by individuals to park purposes. "Land acquired by a municipality by eminent domain, or by the expenditure of public funds, for public use as a park, and not subject to the terms of any gift, devise, grant, bequest, or other trust or condition, may be devoted to some other public use by legislative mandate." 39 Am.Jur. Parks, Squares, and Playgrounds § 21, p. 817. See also, State ex rel. City of Excelsior Springs v. Smith, 336 Mo. 1104, 82 S.W.2d 37; Antonakas v. Anderson Chamber of Com-

merce, 130 S.C. 215, 126 S.E. 35; Rayor v. City of Cheyenne, supra; Re Central Parkway, City of Schenectady, 140 Misc. 727, 251 N.Y.S. 577; 26 C.J.S. Dedication §§ 65 and 66; Annotations, 18 A.L.R. 1248, 63 A.L.R. 486, 144 A.L.R. 492. The ultimate right of control of public parks, as of other governmental property, belongs primarily to the state and not to the municipality in which it is located. Municipalities have only such right of control as is delegated to them. Higginson v. Slattery, 212 Mass. 583, 99 N.E. 523, 42 L.R.A.,N.S., 215; In re Central Parkway, City of Schenectady, supra. In this case the City of St. Louis has the fee to Forest Park, but the legislature, in authorizing St. Louis County (and later the City of St. Louis) to acquire it, specified to what purpose the fee should be held, that is for park purposes. Therefore, the decisive question in this case is whether the legislature of Missouri has delegated to the City of St. Louis the authority to divert any portion of the land of Forest Park proposed to be used for the expressway for purposes other than a park.

The charter of the City of St. Louis, adopted pursuant to an express grant of authority in Art. IX, Sec. 20, Constitution of 1875, V.A.M.S., and continued in force by Art. VI, Sec. 31, Constitution of 1945, V.A.M.S., has all the force and effect of an act of the legislature. Wiget v. City of St. Louis, 337 Mo. 799, 85 S.W.2d 1038, 100 A.L.R. 1284; City of St. Louis v. Fischer, 167 Mo. 654, 67 S.W. 872, 64 L.R.A. 679, 99 Am.St.Rep. 614. That charter grants to the city in the usual manner the authority to open and establish streets, but that, standing alone, is not sufficient to authorize the use of park land for street purposes. Rayor v. City of Cheyenne, supra at p. 118 of 178 P.2d. However, in addition to the above authority, in Art. I, Sec. 1(8) of the charter the city is expressly given the authority "to acquire or receive and hold, maintain, improve, sell, lease, mortgage, pledge or otherwise dispose of property, real or personal, and any estate or interest therein, * * *," and in Art. I, Sec.

1(14) the city is expressly given the authorty "to establish, open, relocate, vacate, alter, * * * parks, public grounds and squares, * * *." The language of the charter provision granting these broad powers contains no limitations that any change in the use of parks brought about by vacating or altering parks or parts thereof must be only of a certain nature or for certain purposes. If it were intended by the legislature that the city could only control and supervise the parks without changing them or the use of the land in any respect, then the above authority to vacate and alter has no meaning because the charter otherwise grants to the city the authority for and provides the procedure of supervising and controlling the public parks. In State ex rel. City of Excelsior Springs v. Smith, supra [336 Mo. 1104, 82 S.W.2d 42], this court recognized that "public convenience, interests, and necessities" may make a change in the location of a public park imperative. The same reasoning applies to the use of a park. The legislature apparently recognized that such circumstances might or would arise in the future, and it granted to the City of St. Louis the authority to vacate park property and to alter a park. We expressly do not decide whether the City of St. Louis has the authority to divert park land to some nonpublic use. Here the use is for a public purpose, and the record clearly establishes that it is a reasonable use which will result in removing a substantial portion of through traffic from the park drives thereby increasing the availability of the remaining park land for park purposes. We conclude that the express legislative authority contained in the charter of the City of St. Louis authorizes the city to divert that part of Forest Park proposed for the public use in constructing the Rock Island Expressway.

We find that the cases from other jurisdictions support the above conclusion. In McCarter v. City of Raton, 45 N.M. 351, 115 P.2d 90, 91, the city proposed to vacate a portion of a public park for the construction of a state highway. The state had by general law granted the city the right "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, * * * parks, and public grounds, and vacate the same * * *." [Comp.St.1929, § 90–402(7) ] It was held that the "rights of the people of Raton were subject to the city's statutory authority to vacate the park or any portion of it." The same result was reached in Lloyd v. City of Great Falls, 107 Mont. 442, 86 P.2d 395, and in Seattle Land & Improvement Co. v. City of Seattle, 37 Wash. 274, 79 P. 780. In Sharp v. City of Guthrie, 49 Okl. 213, 152 P. 403, the fact that the municipality had been granted the authority to alienate the land was held sufficient authority for the city to divert park land. For related cases see also East Chicago Co. v. City of East Chicago, 171 Ind. 654, 87 N.E. 17; City of Detroit v. Judge of Recorder's Court of City of Detroit, 253 Mich. 6, 234 N.W. 445; Spinks v. City of Los Angeles, 220 Cal. 366, 31 P.2d 193; City and County of San Francisco v. Linares, 16 Cal.2d 441, 106 P.2d 369.

The above conclusion disposes of all of plaintiff-appellants' contentions on this appeal pertaining to the issue of whether the construction of the expressway across the northeast corner of Forest Park constitutes an unlawful use of park land. We shall not enumerate and discuss separately the various points in their brief pertaining to that issue.

Plaintiffs challenge the validity of the bonds issued by the City of St. Louis to finance the construction of the Rock Island Expressway, and we shall set forth such facts pertaining to their issuance as is necessary to dispose of the contentions made. Ordinance 47519 of the City of St. Louis, introduced in the Board of Aldermen as Board Bill 3, provided for the submission to the voters "of twenty-three (23) proposals for the incurring of indebtedness and the issuance of bonds of said City in evidence thereof in the aggregate amount of One Hundred Ten Million Six Hundred Thirty-nine Thousand Dollars ($110,639,-000) * * *." Proposition 6 of the ordi-

nance submitted for vote the proposal to issue bonds to the amount of $11,615,000 "for the purpose of establishing, opening, widening, constructing and reconstructing public streets, highways, parkways and boulevards, and otherwise improving the same and acquiring right of ways and land therefor." Proposition 7 of the ordinance submitted for vote the proposal to issue bonds to the amount of $11,400,000 "for the purpose of paying all or part of the cost of constructing, reconstructing, extending and improving bridges, viaducts, underpasses and grade separations and acquiring land therefor." Both propositions were approved by the voters. The ballot set forth the propositions in the language set out above.

■ By point VI in their brief plaintiffs assert that the trial court erred in failing to find and decree "that propositions 6 and 7 of Ordinance 47519 were unconstitutional because [they] did not conform to the provisions of Section 13 of Article IV of the Charter of the City of St. Louis in that the two said propositions contained more than one subject, each, and the subject was not clearly expressed." No reference is made in the point or in the argument thereunder to any provision of the Constitution which is contended to have been violated. Assuming that the charter provision was violated, that would not result in the ordinance or the propositions being unconstitutional. This point could be disposed of on this ground. However, from the argument it appears that plaintiffs intended to assert that the ordinance is invalid because it did not comply with the above charter provision which requires that "No bill, except a general appropriation bill * * * shall contain more than one subject, which shall be clearly expressed in the title."

■ Plaintiffs assert that Ordinance 47519 contains more than one subject because "part of the highways for traffic and some of the bridges and underpasses contemplated by the two propositions were to be constructed upon properties not dedicated to public use and some were to be constructed upon properties previously dedicated to public use." The subject of the ordinance was not the location of the public improvements, but it was whether bonds should be voted to finance the construction of the named public improvements. If the bonds are approved, then the location, size and design of the projects may be determined by those vested with the authority to do so. It was not intended that the face of the ordinance should specify where the public improvements were to be built or upon what land, and "some underlying motive not expressed or disclosed in a legislative act cannot be treated as the subject of the act." Thomas v. Buchanan County, 330 Mo. 627, 51 S.W.2d 95, at p. 97. We find no merit in this contention of plaintiffs, but a further comment is merited. If Ordinance 47519 had specifically spelled out in propositions 6 and 7 that part of the public improvements were to be constructed on land to be acquired and the remainder were to be constructed on land previously dedicated to public use, the ordinance would not for that reason have contained more than one subject. While no previous case has been found specifically ruling such a factual situation, we think that conclusion is obvious. For somewhat analogous situations see State ex rel. Niedermeyer v. Hackmann, 292 Mo. 27, 237 S.W. 742; Spitcaufsky v. Hatten, 353 Mo. 94, 182 S.W.2d 86, 160 A.L.R. 990; State ex rel. Becker v. Smith, 335 Mo. 1046, 75 S.W.2d 574; State ex rel. Town of Canton v. Allen, 178 Mo. 555, 77 S.W. 868; Robinson v. Wiese, Mo. Sup., 210 S.W. 889; State ex rel. School Dist. of Memphis v. Gordon, 223 Mo. 1, 122 S.W. 1008. If, as above stated, to specify the land upon which the improvements were to be constructed would not result in the ordinance containing more than one subject, we do not see how failing to do so could reach that result. What plaintiffs really are complaining about is that the ordinance contains too little, not too much. This leads to the next contention of plaintiffs that there was a failure to "clearly express" the subject of the ordinance in the title because

there was no mention of the proposed diversion of Forest Park. This assertion is necessarily premised upon the incorrect assumption as to what constituted the subject of the ordinance. Nothing in the ordinance purported to require or authorize the use of park land for the construction of the public improvements. The right to use park land for the Rock Island Expressway did not depend upon this ordinance. Therefore, there was no need to mention its use in the title. The title to the ordinance was not defective for this reason.

■ Plaintiffs next challenge the submission of propositions 6 and 7 for a vote by the people of the City of St. Louis because they each contained more than one subject and because the subject was not clearly expressed in that they did not affirmatively state that part of the public improvements would be constructed on park land. This is really a challenge as to the form and substance of the ballot. When propositions 6 and 7 were submitted for a vote in the precise language of the ordinance, as they were in this case, and the ordinance is not defective for the asserted reasons, as we have held, then the form or substance of the submission on the ballot was not defective.

■ Plaintiffs also assert that propositions 6 and 7 affirmatively stated that the bond money was to be used in building highways, underpasses and bridges and "acquiring land therefor," and since part of these improvements are to be built on land already owned by the city this resulted in a "fraud being perpetrated upon the qualified voters." They rely on Meyers v. Kansas City, 323 Mo. 200, 18 S.W.2d 900, where it was held that express authority to purchase a site for a public improvement has to be given before bond issue money could be used for that purpose, and on State ex rel. State Building Commissioner v. Smith, 336 Mo. 810, 81 S.W.2d 613, 615, where authority to use bond issue money "to repair, remodel or rebuild public buildings" did not authorize the expenditure of bond money to

equip them. These cases are not controlling. No unlawful expenditure of bond issue money is involved. The fact that the ordinance, and the propositions as approved by the voters, gave the city authority to construct public improvements, such as streets and highways, and acquire land therefor, does not mean that the city was precluded from building some or part of the streets and highways on land it already owned or which was donated to it without cost. In fact, exhibits in the case indicate that a portion of the expressway east of the park is to be built by widening existing streets, which the city now owns and which is dedicated for public use. The only fair and reasonable interpretation is that the city was authorized to obtain land and rights of way needed.

Plaintiffs next contend that the trial court erred in failing to decree that a contract entered into by the City of St. Louis and V & M Contracting Company for the construction in Forest Park of some of the authorized facilities was null and void. This contention is based solely on the previously ruled contentions that the city had no legal right to use any of the land in Forest Park for the Rock Island Expressway, and in view of our previous ruling this contention deserves no further comment.

■ Plaintiffs' last point in its entirety is that "The court erred in failing to find and decree that Ordinance 48941 did not authorize the construction of an underpass." This point totally fails to "state why it is contended the Court was wrong in any action or ruling sought to be reviewed." Civil Rule 83.05(e), V.A.M.R. We would be justified in considering it no further. Domijan v. Harp, Mo.Sup., 340 S.W.2d 728. As a matter of interest, however, we find that in the argument plaintiffs assert that Ordinance 48941 of the City of St. Louis authorized the construction of "bridges" but does not authorize the construction of an underpass, and that the contract between the City of St. Louis and V & M Contracting Company was for the construction of an "underpass." Ordinance 48941 actually au-

thorized the Board of Public Service to contract "for the construction of bridges on the Forest Park Parkway, including Lindell-Union, Grand Drive * * * together with all incidental construction therewith." From other exhibits and the testimony it appears that V & M Contracting Company contracted to build a structure at each place which was designed to serve as a "bridge" for the existing street or drive over the expressway and as an "underpass" for the expressway under the street or drive crossing the bridge. By whichever name it is called, the authority for "all incidental construction therewith" included such features as were necessary to provide for both uses.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.