## CITY OF DETROIT *v.* JUDGE OF RECORDER'S COURT OF CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—DEDICATION—HIGHWAYS AND STREETS—REVERSIONARY INTEREST—WAIVER—ACCEPTANCE OF PLAT—ABANDONMENT.

   Reservation by dedicators of plat of strip of land in middle of street for ornamental purposes, with right to abutting owners to vacate street if city failed to maintain strip in ornamental manner, did not of itself empower city to abandon it at will, but dedication must be presumed to be subject to city's right, under its charter (Act No. 326, Local Acts 1883, chap. 7, § 33, as amended by Act No. 544, Local Acts 1887), to abandon strip, and acceptance of plat and dedication did not constitute waiver of said right.

2. PLEADING—DISMISSAL AND NONSUIT—MOTION TO DISMISS—ASSUMPTION.

   In disposing of motion to quash petition for condemnation of land to widen city street, court must assume that facts set forth in petition are true and that necessity to condemn may be established.

3. EMINENT DOMAIN—NECESSITY JURY QUESTION.

   In proceedings to condemn land to widen city street, question of necessity must be determined by jury.

4. SAME—CONDEMNATION OF PUBLIC LAND MUST BE AUTHORIZED BY LEGISLATURE.

   Condemnation for public purpose of land already used for public purpose must be authorized by legislature, if proposed use materially interferes with present use.

5. SAME—PRIVATE RIGHTS IN ORNAMENTAL STRIP OF LAND.

   Rights of owners of reversion and abutting owners in strip of land in middle of street reserved by dedicators for ornamental purposes constitute private property, which must be acquired by city before strip may be used for street purposes.

---

On right of city to set aside portion of street for park strips, see annotation in 20 L. R. A. (N. S.) 593.

6. Municipal Corporations—Constitutional Law—Right to Control Streets.

Under the Constitution (section 28, art. 8), right to control of streets, alleys, and public places is reserved to cities, villages, and townships.

7. Same—Eminent Domain—Highways and Streets—Detroit Charter.

Under charter of city of Detroit, adopted pursuant to so-called home-rule act, common council of said city has right to condemn private property for street purposes.

8. Eminent Domain—Highways and Streets.

Proceedings by city of Detroit to condemn ornamental strip of land in middle of street for purpose of widening street were properly brought under Act No. 149, Pub. Acts 1911, § 2, where owners of reversion and abutting property owners had property rights in said strip.

9. Same—Attempt to Purchase Unnecessary.

It was unnecessary to first attempt to purchase reversionary interest and rights of abutting property owners in strip of land in middle of street reserved for ornamental purpose before beginning proceedings to condemn said strip for purpose of widening street.

10. Mandamus—Motion to Dismiss Condemnation Proceedings—Review.

Where, in reviewing order dismissing petition to condemn land to widen city street, only questions of law are raised, and mandamus is effective, mandamus is permitted, as against objection that it is not proper remedy.

Mandamus by City of Detroit, a municipal corporation, to compel John V. Brennan, judge of the Recorder's Court of the City of Detroit, to vacate an order dismissing petition in proceedings to condemn certain land for street purposes. Submitted October 21, 1930. (Calendar No. 35,310.) Writ granted January 7, 1931. Rehearing denied June 1, 1931.

*Arthur F. Lederle* (*Clarence E. Wilcox*, of counsel), for plaintiff.

*Leo Kuschinski,* for defendant.

BUTZEL, C. J. In 1894 the trustees of the owners subdivided and recorded a plat of that part of Brush Farm lying between Brady street and Alexandrine avenue in the city of Detroit. It consisted of a parcel of property some 900 feet in length and 411 feet or thereabouts in width. A strip of land 60 feet in width and 900 feet in length was reserved in the middle of the subdivision and dedicated to the public use as a "park for the adornment of the highway and for no other purpose whatever." The subdivision was so laid out that Brush street, then already an important thoroughfare, running in a northerly and southerly direction, made a slight jog at the entrance of each end of the subdivision and then continued in the form of two roadways, each 23 feet in width along the east and west sides of this ornamental strip or park. Thus the roadways became a part of Brush street.

On the east and west sides of the roadways, after provision was made for sidewalks, etc., the plat of the subdivision provided for building lots, each approximately 50 feet in width. The dedication required that this 60 foot strip, running along the middle of the subdivision, be set out by a landscape gardener and maintained in an ornamental manner, and that if the city should fail to keep the strip in a condition for the use as set forth, then the owners of a majority of the feet of land fronting on the street would have the right to vacate the street and revoke the dedication, except as to the 60 foot strip along the middle thereof. No provision was made in the dedication as to what should happen to the 60 feet strip in the event of the city's failure to carry out the terms of the dedication.

At the time of the dedication, the city of Detroit was operating under the provisions of a charter (Act No. 326, Local Acts 1883), chapter 7, § 33, of which (as amended by Act No. 544, Local Acts 1887) also provided that the common council might "alter, vacate or abolish * * * public grounds or spaces within said city." The reservation in the dedication by the grantors, in which they provided for the contingency of the abandonment of the ornamental strip or park, did not of itself empower the city to abandon it at will. *Douglass* v. *Montgomery,* 118 Ala. 599 (24 South. 745, 43 L. R. A. 376). Nevertheless, when considered in connection with the power which, under the charter at the time of the dedication, the council had to alter, vacate or abolish public grounds, it must be presumed that the dedication was subject to the city's right to abandon the strip. There was no waiver of such right when the city accepted the plat and dedication.

The subject of the present controversy is the 60-foot ornamental strip which the city now wishes to use for the purpose of widening Brush street instead of for the adornment of the highway. Since 1894 Detroit has grown from a comparatively small city of less than 250,000 inhabitants to one of over 1,600,000. Brush street has become one of its most important thoroughfares. It runs from the Brush street depot adjoining the Detroit river to the northerly part of the city. It is a through street, before entering which vehicles approaching from a side street must stop. It is claimed that the 23-foot roadways have become entirely too narrow to accommodate the very heavy traffic that travels on them, and particularly so since the character of the street has changed as set forth in petitioner's brief.

Upon an attempt being made by the board of public works of the city of Detroit to remove the trees and shrubbery from this ornamental strip and to grade it to the street level for the purpose of including it as part of Brush street, injunctive relief was sought by some of the abutting property owners. A permanent injunction was issued by the circuit court for the county of Wayne restraining the city from taking this strip for street purposes without first appropriating by condemnation proceedings the rights of the abutting property owners. · Thereupon, the common council of the city of Detroit, its legislative body, adopted a resolution declaring that it was necessary to widen the street and ordering that proceedings be brought to condemn the right and title of all abutting property owners and persons interested in the strip. The corporation counsel began condemnation proceedings in the recorder's court for the city of Detroit wherein the city is the petitioner and the owners of the abutting property and of the reversion, are the respondents. On a motion to quash by one of the respondents, the judge of the recorder's court entered an order dismissing the petition, on the ground that there was no power of eminent domain that can be exercised by the city in order to condemn property that is already being used for public purposes. Mandamus is sought in the present case to compel the judge to set aside this order and proceed with the trial of the case.

For the purpose of considering this motion to quash, a court must assume that the facts set forth in the petition are true and that necessity to condemn may be established. In order to more clearly bring out these facts, reference is made to petitioner's brief, wherein certain facts, that can be

readily observed, are set forth. The entire character of the neighborhood in which the subdivision is located has changed. All the lots on both the east and west sides of the subdivision have been built upon. A large portion of the lots on the west side of the street is occupied by Harper hospital, one of the largest hospitals in the city of Detroit, whose new addition, being the main building, with the adjoining grounds, now front on Brush street. Necessarily a very large number of vehicles come to the hospital's entrance on Brush street. On one corner on the east side of the street there is also the Dunbar hospital for colored people. In addition to this, two gas stations occupy corners, and an undertaking establishment and two commercial buildings occupy other lots. It can also be readily seen that the ornamental strip is too narrow for general park purposes. It was dedicated for "the adornment of the highway and for no other purpose." On the question of necessity, the claim may be made that instead of the strip adorning the highway, it has become an obstruction to the safety of persons and vehicles using the street. In any event, the question of necessity must be determined by the jury. Assuming that such necessity exists, we are confronted with the question whether, under the circumstances, the law prevents the exercising of the right of eminent domain by the city for the purpose of acquiring the rights of respondents in this strip of property which was dedicated for another purpose.

The instant case must be distinguished from those in which one public corporation is attempting to exercise its power of eminent domain in order to appropriate for a different use property used by and belonging to another public corporation. If the second use materially interferes with the first, pro-

ceedings to condemn property already used for a public purpose must have been authorized by the legislature. *Matter of City of Buffalo,* 68 N. Y. 167; *Rutland-Canadian R. Co.* v. *Railway Co.,* 72 Vt. 128 (47 Atl. 399); *Sabine, etc., R. Co.* v. *Railway Co.,* 92 Tex. 162 (46 S. W. 784).

We are not considering the right of the city to put to a different use the whole or part of a large public park in which the courts have generally held that each and every citizen has an interest. There is no question of fraud or abuse of discretion by the common council of the city of Detroit. The instant case pertains solely to a narrow strip of land which may have become an obstruction to traffic to the extent of its 900 feet of length of what otherwise is a broad street or boulevard for many miles. In the exercise of its police power and the regulation of the city's traffic and looking after the safety of life, limb, and property of its citizens, has the city a right to change this strip from an ornamental park into part of a roadway? Had the city acquired this strip by condemnation proceedings or purchase, or in any other manner, without restrictions, there would be no question of its right to make this change. *Village of Riverside* v. *MacLain,* 210 Ill. 308 (71 N. E. 408, 66 L. R. A. 288, 102 Am. St. Rep. 164); *Seattle Land & Improvement Co.* v. *City of Seattle,* 37 Wash. 274 (79 Pac. 780); *Spires* v. *City of Los Angeles,* 150 Cal. 64 (87 Pac. 1026, 11 Ann. Cas. 465). To take an extreme illustration: Had commons been purchased by the city for pasture purposes or a smaller strip for a horse trough, there is no question but such purposes would have had to give way to the far greater needs of a metropolitan city. The city has control of its public places under its charter. The city did acquire this

strip of land subject at the time of the dedication to the right under the charter to alter, vacate, or abolish its public places, but also subject to certain rights of the reversioners and abutting property owners, should the ornamental strip or park be abandoned. The property was not turned over to the city by congress for an express purpose, so that it cannot be used for a street, as was the case in *Board of Education* v. *Detroit,* 30 Mich. 505. It falls rather within the rule of *Hinchman* v. *Detroit,* 9 Mich. 103, and *Riggs* v. *Board of Education,* 27 Mich. 261, if the rights of respondents are appropriated after necessity is found and compensation made.

In coming to our conclusion, we find that there are only three parties interested in this proceeding, the city, the owners of the reversion, and the abutting property owners. The city would have a right to alter or change this ornamental strip into a street had it the consent of the owners of the reversion and the abutting property owners, which it is attempting to secure in the present proceedings. Any rights that the owners of the reversion and abutting property owners have in said strip or ornamental park constitute private property.

The city is attempting to secure and pay for such private property through condemnation proceedings. This is a proper method of acquiring these rights. The judge of the lower court, in quashing the petition, based his decision largely on cases where, without any legislative grant, one public corporation was attempting to condemn property belonging to another public corporation and used for public purposes, or where the rights of abutting property owners were not respected. In the present case the city is attempting to condemn the private

interests of the reversioners and abutting property owners so that it will put itself in the same position as if it had owned the property free from all claims of others and thus be able to use the property for such greater demands as have been occasioned by the growth of the city, the change in the neighborhood and the necessities in the case.

Under section 27, art. 8, of the Constitution of the State of Michigan:

"The Legislature shall not vacate nor alter any road laid out by the commissioners of highways, or any street, alley or public ground in any city or village or in any recorded town plat."

Under section 28 of the same article, it is provided that:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

Under section 4, subdivision (k), Act No. 279, Pub. Acts 1909, as amended by Act No. 5, Pub. Acts 1913, the same being the home rule act (1 Comp. Laws 1929, § 2228 *et seq.* See § 2235), under which the city is organized:

"Each city may in its charter provide:   *   *   *
"(k) For the purchase and condemnation of private property for any public use or purpose within the scope of its powers."

Under the condemnation act, section 2, Act No. 149, Pub. Acts 1911, under which the proceedings are brought, it is provided that:

"The term 'private property' as herein used shall include lands, tenements, hereditaments and tangible and intangible property whether real, personal or mixed."

Under the charter of the city of Detroit, adopted by the people on June 25, 1918, the common council has the legislative power to provide for the management and control of all property, including streets, alleys, and other public places dedicated to its use or under its jurisdiction. Paragraph (g), section 12, chap. 1, tit. 3, Detroit city charter. It further has the right to condemn private property for its use. We believe that, under the provisions quoted, as applied to the facts in this case, the proceedings were properly brought for the purpose of condemning private property of respondents so that the city might change the purpose of the strip from that of an adornment of the highway to one of necessity, provided that the jury finds necessity, and awards the respondents in the condemnation suit such compensation as may be found due them.

Claim is made that mandamus is not the proper method of appeal to this court. As questions of law are solely raised in the present case and mandamus is effective, we will permit it.

It was unnecessary to first attempt to purchase the rights of respondents in advance of the filing of the petition, as is claimed. *Department of Conservation* v. *Hane,* 248 Mich. 473.

A writ will issue directing the respondent judge of the recorder's court to reinstate the petition and proceed with the trial of the case.

Wiest, Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.