FORD *v.* CITY OF DETROIT.

1. DEDICATION—ABANDONMENT—MISUSE.
   Neither misuse nor nonuse will be sufficient to constitute an aban-
   donment of land dedicated to a public use so as to work as a
   reverter to the dedicators.

2. SAME—PARKWAY FOR ADORNMENT OF STREET—BASE FEE—RE-
   VERTER.
   Acts of city, with reference to 60-foot strip of land in center of
   street, dedicated to public use as a park for adornment of
   highway, in removal of trees and shrubbery, excavation, con-
   demnation proceedings and subsequent restoration *held*, a mis-
   user but not an abandonment entitling holders of right of
   reverter to maintain ejectment.

3. SAME—DIVERSION.
   Any use which is inconsistent, or which substantially and 'ma-
   terially interferes, with the use of the property for the particu-
   lar purpose to which it was dedicated, will constitute a mis-
   user or diversion.

   POTTER, C. J., and EDWARD M. SHARPE, J., dissenting.

Appeal from Wayne; Gadola (Paul V.), J., pre-
siding.  Submitted June 12, 1935.  (Docket No. 3,
Calendar No. 38,195.)  Decided November 12, 1935.

Ejectment by Virginia Brush Ford and others
against the City of Detroit, a municipal corporation,
to gain possession of land "dedicated to the public
use as a park for the adornment of the highway."
Emma P. Simmons and others intervened as parties
defendant.  Judgment for plaintiffs.  Defendant
city appeals.  Reversed, without a new trial.

*Hobart B. Hoyt* (*Edward H. Rakow*, of coun-
sel), for plaintiffs,

*Raymond J. Kelly,* Corporation Counsel, and *Arthur F. Lederle,* Assistant Corporation Counsel, for defendant city.

BUTZEL, J. The facts involved in this case are set forth in Mr. Justice EDWARD M. SHARPE's opinion. They, however, should be supplemented with the following statements. In the case heard by the late Judge Covert in which plaintiffs were not parties, a final decree was entered enjoining the city from appropriating the 60-foot park for street purposes and ordering it to restore the property to its former condition. The court held that the taking of the property was unlawful and that the only way the city could use the property as a street was through condemnation proceedings. Instead of restoring the property at once as ordered by the court, the city immediately began condemnation proceedings. Upon objection made, the recorder's court of the city of Detroit entered an order dismissing the petition and the proceedings for condemnation. On appeal we reversed the trial court and directed it to proceed with a trial of the condemnation case. *City of Detroit* v. *Judge of Recorder's Court,* 253 Mich. 6. The jury assessed damages in such an amount that the city believed that the cost exceeded the benefits and thereupon discontinued the proceedings. This it had a right to do prior to the confirmation of the verdict. *In re Board of Education of City of Detroit,* 242 Mich. 658. The instant case was heard in December, 1931, but the trial judge did not hand down his opinion until July, 1934, because, as he stated in his opinion, he hoped that when the property was replaced to its original condition as a park the plaintiffs would withdraw their claim. He also found that the property had been restored to its

original state. The record containing the testimony heard in 1931 obviously did not show this subsequent restoration. Plaintiffs in their brief do not deny that it was so restored, but call attention to the fact there is no testimony to this effect. The court in the findings of law made the following statement:

"This court has not the decision of Judge Covert, who heard the chancery action before him, but is informed that the decision was that the city be permanently enjoined from proceeding with this plan of laying their pavement through the strip in question, and requiring them to restore the property to its original state, which has been done."

It further stated near the end of the opinion:

"This court has withheld its decision in this matter for an unusual and really unwarranted time, mainly hoping that when the property was replaced in its original condition, as a park, that the plaintiffs would withdraw their objections."

No objections were taken by the plaintiffs to the findings of the court nor is there any cross-appeal. Even had the property not been restored to its original condition, defendant was bound by judicial decree to make such restoration. Plaintiffs, although not parties to the first chancery case, could by appropriate action force the restoration if not made, and further, can enjoin the misuse of the property. We therefore have a case where the city unlawfully tried to divert the use of the property to that of a roadway instead of a narrow parkway originally intended to adorn the highway but which possibly might have become of more service if used as part of the highway. There was plainly a misuse of the property. The city was therefore enjoined and ordered to restore the property. Seeing the waste-

fulness of first restoring the property and then condemning it, the city immediately began condemnation proceedings and during the pendency of the court proceedings made no effort to restore the property. The cost of such restoration, if the park was to be used as a street, would unquestionably have been a sheer waste of money. Nothing at all was done with the property during this long wait. This again was a misuse of the property since under the terms of the dedication the property was to be used only as a park. Misuse or nonuse does not as a rule work a forfeiture. Neither misuse nor nonuse alone will be sufficient to constitute an abandonment of land dedicated to a public use so as to work as a reverter to the dedicators. *McAlpine* v. *Railroad Co.,* 68 Kan. 207 (75 Pac. 73, 64 L. R. A. 85, 1 Ann. Cas. 452); *Williams* v. *First Presbyterian Society,* 1 Ohio St. 478, 510; *Goode* v. *City of St. Louis,* 113 Mo. 257 (20 S. W. 1048); 4 McQuillin, Municipal Corporations (2d Ed.), § 1737; 3 Dillon, Municipal Corporations (5th Ed.), § 1106. The rule is well stated in *Barclay* v. *Howell's Lessee,* 6 Pet. (31 U. S.) 498, as follows:

"If this ground had been dedicated for a particular purpose, and the city authorities had appropriated it to an entirely different purpose, it might afford ground for the interference of a court of chancery, to compel a specific execution of the trust, by restraining the corporation, or by causing the removal of obstructions. *But, even in such a case, the property dedicated would not revert to the original owner. The use would still remain in the public, limited, only, by the conditions imposed in the grant.*"

There is no doubt that the acts of the city constituted a misuser and not an abandonment, for they

come within all the definitions of misuser set out in the above cases, and as stated in *Brown* v. *City of East Point,* 148 Ga. 85 (95 S. E. 962):

"Any use which is inconsistent, or which substantially and materially interferes, with the use of the property for the particular purpose to which it was dedicated, will constitute a misuser or diversion."

See, also, *Village of Riverside* v. *MacLain,* 210 Ill. 308 (71 N. E. 408, 66 L. R. A. 288, 102 Am. St. Rep. 164); *Price* v. *Thompson,* 48 Mo. 361, where under facts somewhat similar to the instant case the court held that there was a diversion or a misuse of the property.

In the instrument of dedication the grantors stated that a reversion to the grantors, their heirs and assigns would occur if the use of the property were "legally discontinued." As we have shown, there was no "legal discontinuance," but rather a misuser, and there being no abandonment, the plaintiffs may not recover.

The judgment is reversed, with costs to the defendant and without a new trial.

NORTH, FEAD, WIEST, and BUSHNELL, JJ., concurred with BUTZEL, J.

EDWARD M. SHARPE, J. (*dissenting*). In 1894 the trustees of the estate of Edmund Brush, deceased, dedicated a strip of land 60 feet wide extending down the center of Brush street from Brady street to Alexandrine avenue in the city of Detroit. That part of the dedicatory statement pertinent to this case is as follows:

"We, the said trustees, as first parties, do hereby dedicate to the public the perpetual use of their re-

spective interests in the streets and park (where not already dedicated) as represented on the annexed plat. The parcel hereby dedicated forms a continuous strip 130 feet in width and extending from Brady street to Alexandrine avenue. They reserve to themselves respectively, and to their heirs and assigns, the reversion of said lands whenever the use of the same for the purpose herein designated shall be legally discontinued.

"The center strip 60 feet in width is dedicated to the public use as a park for the adornment of the highway and for no other purpose whatever. The dedication hereby made to the public is upon the following conditions: * * *

"Third: That grantee will maintain said improvements and street and keep them in perpetual good order as a highway park suitable for the purpose contemplated.

"Fourth: Should said grantee fail to keep any of the above conditions, the owners representing a majority in feet of the property fronting upon the street hereby dedicated may elect to vacate said street and revoke this dedication, except as to the strip 60 feet wide along the middle thereof, which election may be expressed by a notice to that effect signed by said majority in feet of the then owners of the property fronting thereon and served upon said grantee, upon which said property shall immediately revert and be invested in such owners respectively from the front line of their lot or lots to a line 30 feet from the middle of said plat."

Since the dedication of the above strip of land in 1894, the city of Detroit has grown to be a large metropolitan city and Brush street has become one of its most important thoroughfares. In 1928, the common council of the city of Detroit having in mind that travel would be more convenient on that part of Brush street if the pavement could be widened, authorized the department of public works to re-

locate a portion of the street so as to take a portion of what was formerly the center 60-foot park for street and highway purposes and to move the park to the westerly side of the highway.

Pursuant to this resolution, many of the trees were moved to the west side of the park and a strip about 400 feet long and 36 feet wide was excavated with an average depth of about 16 inches. While this work was going on, the owners of the lots abutting on the boulevard brought an action in chancery to restrain the city of Detroit from widening the street; and on July 1, 1929, the late Judge Covert, acting in Wayne county circuit court, authorized the issuance of an injunction enjoining the city from proceeding with its plans for laying the pavement through this property. In September, 1929, the common council of the city of Detroit passed a further resolution declaring it necessary to take the entire strip in order to widen Brush street and authorized the corporation counsel to institute the necessary condemnation proceedings, which were commenced but dismissed by the trial judge because of want of jurisdiction. This cause was then appealed to the Supreme Court and the opinion is reported in *City of Detroit* v. *Judge of Recorder's Court,* 253 Mich. 6, 12, 15, where we held, among other matters, that:

"The city has control of its public places under its charter. The city did acquire this strip of land subject at the time of the dedication to the right under the charter to alter, vacate, or abolish its public places, but also subject to certain rights of the reversioners and abutting property owners, should the ornamental strip or part be abandoned. * * *

"We believe that, under the provisions quoted, as applied to the facts in this case, the proceedings were properly brought for the purpose of condemn-

ing private property of respondents so that the city might change the purpose of the strip from that of an adornment of the highway to one of necessity provided that the jury finds necessity, and awards the respondents in the condemnation suit such compensation as may be found due them.''

Following this opinion the condemnation petition was reinstated; the cause was tried and the jury returned a verdict of necessity and fixed the amount of compensation. Thereupon the common council discontinued the condemnation proceedings. However, before discontinuance and on May 19, 1931, the plaintiffs in this cause served the following notice upon the city of Detroit:

''You are hereby notified that by reason of the abandonment by said city of the use for park purposes of that certain piece or parcel of land situated in the said city of Detroit, described as follows: * * * and the legal termination by said city of the use for which said land was dedicated, the undersigned, as owners of the reversionary interest in said land, have elected, and hereby further elect, to declare and do hereby declare that said city of Detroit has forfeited whatever right, title or interest it may have had in and to said land by virtue of said dedication.

''You are further notified to yield, surrender and deliver up the said premises to the undersigned, and that the undersigned claim the right to re-enter the said strip of land and take possession of the same.''

Plaintiffs are the sole surviving heirs at law of Edmund A. Brush, deceased, and also are the sole surviving heirs at law of the trustees who executed the plat and dedication. On May 27, 1931, plaintiffs commenced an action of ejectment against the city of Detroit to recover possession of the strip of land, and prevailed in the court below; the city of Detroit appeals.

Plaintiffs base their claim of ownership of this property on the theory that:

1.   The dedication of the land "as a park for the adornment of the highway and for no other purpose whatever," operated to vest in the city a base or determinable fee;

2.   The affirmative acts of the city culminating in the condemnation resolution and the condemnation proceedings constituted abandonment.

The dedication herein was made in 1894 by recording the plat. Act No. 309, Pub. Acts 1887 (1 Comp. Laws 1897, § 3372), in force at the date of recording, provides:

"The map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then the township within the limits of which it is included *in trust to and for the uses or purposes therein designated and for no other use or purpose whatever.*"

"A plat conforming to the statute * * * operates as a conveyance of a fee. * * * This was an innovation, for under the common-law rule the owner held the fee in trust to the use of the public." *Patrick* v. *Y. M. C. A.,* 120 Mich. 185, 189.

Although it has never been necessary for this court to determine the kind of fee which dedication under this statute creates, nevertheless, it has considered this question in the following cases: *County of Wayne* v. *Miller,* 31 Mich. 447; *Supervisors of Kent County* v. *City of Grand Rapids,* 61 Mich. 144; *Patrick* v. *Y. M. C. A., supra.*

The comment made by the Utah court in *Sowadzki* v. *Salt Lake County,* 36 Utah, 127, 142 (104 Pac. 111), in construing a statute similar to ours is applicable herein:

"From this counsel no doubt draw the inference that the title to land to which the fee has passed cannot be lost by mere nonuser or abandonment, but, if lost at all, it must be by operation of law or by adverse possession. That the general rule is to this effect is conceded. * * * While the word 'fee' is used in the section, it is clear from what follows that it was not intended that the fee of the corpus or land itself should pass, but only the fee to the surface, and this only for public use for all purposes of a street or highway. The fee mentioned in the statute was thus what is known as a limited or determinable fee, and was created for a special purpose or purposes only, and hence was subject to abandonment. This was also the construction the owner of the land placed upon this statute in making the dedication of Wabash avenue as a street. In the dedication he says: 'Do hereby dedicate to the perpetual use of the public.' * * * This is not an absolute grant, but one only for a special purpose."

In *City of Detroit* v. *Judge of Recorder's Court, supra,* we held that:

"The reservation in the dedication by the grantors, in which they provided for the contingency of the abandonment of the ornamental strip or park, did not of itself empower the city to abandon it at will. *Douglass* v. *Montgomery,* 118 Ala. 588 (24 South. 745, 43 L. R. A. 376). Nevertheless, when considered in connection with the power which, under the charter at the time of the dedication, the council had to alter, vacate or abolish public grounds, it must be presumed that the dedication was subject to the city's right to abandon the strip. There was

no waiver of such right when the city accepted the plat and dedication.''

We are of the opinion that under both the statute and the grant the city of Detroit was not vested with a fee simple absolute, but only a determinable or qualified fee in trust for the uses named in the grant, namely, ''for a park for the adornment of the highway and for no other purpose whatever.''

The limitation upon the title necessarily implies that there is an interest not conveyed, and that a possibility of reverter exists in the plaintiffs as heirs of the original grantors.

The defendant next contends that there was no abandonment of the property. If there was an abandonment it must have occurred on or before May 19, 1931, which is the date that plaintiffs served the city with a notice of forfeiture.

The general rule relative to the right to invoke a forfeiture may be found in *Treat* v. *Railway,* 157 Mich. 320 (133 Am. St. Rep. 347), and affirmed in *Weber* v. *Ford Motor Co.,* 245 Mich. 213, where we said:

''Real property conveyed subject to a condition subsequent, whereby the title shall revest upon failure to perform the condition, may not be regained by ejectment proceedings without a notice of the particular cause of forfeiture, and of the intention to claim the right, and a reasonable length of time in which to comply.''

The uncontroverted facts in this case are that prior to June 26, 1928, when the council passed a resolution directing the department of public works to close the lane on the west side of the park and widen the roadway on its easterly side by using property involved in this case for street purposes, the

park was in good condition, well sodded and planted with trees and shrubbery. Moreover, it was cared for by the park board. Following this resolution, trees and shrubbery were removed from the east side of the park, an excavation was made 36 feet in width and about 400 feet long with an average depth of 16 inches and such portion, so excavated, was graded to paving level.

Furthermore, we find that the dirt removed was taken to other parts of the city. In 1930, the city built a fence around two-thirds of the property; and before that time, the place was used by the public for parking cars. Not only did the city do these affirmative acts, but in addition adopted the condemnation resolution, commenced condemnation proceedings, and carried them to a verdict of necessity. We think that such acts on the part of the city of Detroit show not only an intent to abandon the park but also show that it was their intent to transform the park into a street. This case is distinguishable from *Village of Grosse Pointe Shores* v. *Ayres,* 254 Mich. 58. In that case the park was a part of the street and not dedicated for "park purposes" as in the instant case.

The judgment of the lower court should be affirmed, with costs to plaintiff.

POTTER, C. J., concurred with EDWARD M. SHARPE, J.

The late Justice NELSON SHARPE took no part in this decision.