STATE HIGHWAY COMMISSION v TOWNSHIP OF ST JOSEPH

1. DEDICATION—ABANDONMENT—EVIDENCE.

A "park area" dedicated to and accepted by a township had not been abandoned where the party asserting abandonment failed to meet the burden of proof of showing that the purpose for which the property had been dedicated to the public had wholly failed, and where nonuse of the "park area" was not accompanied by some act or circumstance showing an intention to relinquish the property.

2. EMINENT DOMAIN—DEDICATED PROPERTY—STATUTES.

The general rule that property dedicated to public use may not be taken under a general eminent domain statute because such a statute provides only for the acquisition of private property did not apply and township land was subject to condemnation by the State Highway Commission like the property of private persons without finding a special intent in the statute to authorize taking of public property where (1) the property dedicated to the use of the public for "park purposes" had not been used by the public since it was dedicated and for a period of eight years, (2) no public money had been appropriated for or expended on the "park", (3) there was no showing of a need for the dedicated "park" land over other available land for the same use including land offered by the party petitioning for condemnation in exchange for the land in question, (4) there was only a possibility of future use by the public of the "park area", and (5) the township to which the "park" was dedicated had not sought a right-of-way to the "park area" by condemnation or purchase, although both avenues had been open for a full eight years since the land was dedicated (MCLA 213.361 *et seq.*).

Appeal from Berrien, Nathan J. Kaufman, J. Submitted Division 3 April 5, 1973, at Grand

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Dedication § 66.
[2] 27 Am Jur 2d, Eminent Domain § 266.

Rapids. (Docket Nos. 14949, 14950.) Decided June 28, 1973. Leave to appeal denied, 390 Mich —.

Petition by the State Highway Commission to condemn for highway purposes private property dedicated to the Township of St. Joseph as a recreational area. Motion for review of necessity filed by the township. Judgment for petitioner. Respondent appealed and the case was remanded with instructions (21 Mich App 592). Judgment for petitioner. Respondent appeals. Affirmed as modified and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, and *Henry W. Gleiss,* Special Assistant Attorney General, for petitioner.

*Hartwig, Crow & Jones,* for respondent.

Before: HOLBROOK, P. J., and T. M. BURNS and CHURCHILL,* JJ.

HOLBROOK, P. J. This appeal comes to us after our remand in 21 Mich App 592; 175 NW2d 898 (1970). What we stated therein is incorporated in this opinion by reference.

The trial court on remand July 20, 1972, decided the matter after many delays occasioned by the endeavor of the parties to settle their differences and at their request. The judgment of the court below reads as follows:

"This Cause having been brought on for hearing before this Honorable Court, and the briefs having been filed by all parties, and this cause having been remanded to this Court by the Court of Appeals for further proceedings and the Court having rendered its

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Opinion in writing, the contents of said Opinion being incorporated in this Judgment, NOW, THEREFORE, This Court herewith finds as a fact there was no fraud on the part of the Petitioner, Michigan State Highway Commission and further finds that there was no abuse of discretion on the part of the Petitioner, Michigan State Highway Commission, and therefore the relief prayed for in the Motion for Review of Necessity by the Township of St. Joseph is hereby denied."

In the trial judge's opinion he found that the land in question was dedicated for recreational use of the public by plat duly recorded in the Berrien County Register of Deeds office October 3, 1960, and accepted by the Township of St. Joseph. This determination is in accord with this Court's ruling in *Bangle v State Treasurer,* 34 Mich App 287; 191 NW2d 160 (1971). The trial court further determined that the Township of St. Joseph had abandoned the "park or recreational land" dedicated to the use of the public in the plat.

The trial court also ruled that the Township of St. Joseph "does have a justiciable interest within the meaning of MCLA 213.368; MSA 8.261(8), and therefore is properly before the court and entitled to notification of all hearings concerning this property".

The defendant St. Joseph Township raises the single issue on appeal: Is it fraud or abuse of discretion within the meaning of 1966 PA 295, § 8; MCLA 213.368; MSA 8.261(8) for the highway commission to attempt to condemn land previously dedicated to the public for park purposes and for utility easements and for municipal utilities?

A part of the pertinent facts are stated in the brief of appellant as follows:

"On June 19, 1968, the Michigan State Highway Commission, by its attorney, Mr. Drew, a Special Assist-

ant Attorney General, filed in the Circuit Court for the County of Berrien, a Petition and Demand for Jury Trial together with an Order for Hearing on the Petition and a Notice of Taking and Statement of Estimated Compensation and a Declaration of Taking seeking to acquire a parcel of land in St. Joseph Township.
* * *

"The action was against 18 different owners of lots in a subdivision designated as Kerley's Acres No. 2 in St. Joseph Township and was for the purpose of acquiring 'all the right, title and interest in and to the recreation area, lying between the railroad right-of-way and Lots 14, 15, 16 and 17 as dedicated in " 'Kerley's Acres No. 2' " * * * '. The particular parcel of land that the Highway Commission was seeking to acquire is an irregular shaped parcel, 105.1 feet wide at its north boundary, 73.96 feet wide at its south boundary and 366.9 feet long on the east side which easterly side abutted these lots in the subdivision and the westerly side was a slightly curved line abutting the railroad right-of-way which is 341.12 feet long. * * *

"On June 21, 1968, virtually identical pleadings involving the same parcel of land were filed by the State Highway Commission by Mr. Gleiss, Special Assistant Attorney General, naming 16 other individuals who were owners of other lots in the subdivision. * * *

"On July 8, 1968, St. Joseph Township filed Notice of Motion to Review Necessity pursuant to the terms of Section 8 of the statute, in both of these cases alleging that the Township of St. Joseph claims a justiciable interest in the property that was the subject matter of these two proceedings by reason of the fact that the lands were dedicated to the use of the public as set forth in the dedication and for the further reason that a portion of said property was reserved for public and municipal utilities as set forth in said dedication and that said property was accepted by the St. Joseph Township Board by resolution duly passed at a meeting held on the 6th day of September, 1960.

"In its Motion for Review of Necessity, the Township claimed both fraud and/or abuse of discretion for the reasons: first, that the statute under which Petitioner was proceeding authorized and allowed the acquisition

of private property only and not public property; secondly, that the Petitioner had alleged that they had been unable to agree with all persons interested in said parcel when in fact this was false in that Petitioner well knew of the interest of the Township in the parcel and had not attempted to negotiate in good faith for purchase of the same; thirdly, that the Highway Commission alleged that their petition contained the names of all the persons interested therein so far as known when in fact they had omitted the name of the Township and other procedural defects were alleged in the petition and the Township requested that the Court dismiss the petition."

At the trial Arthur E. Benford, Chairman of the Parks Board of St. Joseph Township, testified that he had been chairman since 1966 and that prior to that he was a member of the park commission for two years. He further testified that he examined the minutes of the park commission from the time of the dedication of this recreation area and that on April 17, 1961, the minutes showed that a motion was made to have the township attorney investigate the acceptance of the property offered which was to be used for park purposes and that on August 17, 1961, the minutes reflected that a member of the park commission would contact and request a deed from one of the original platters of the property and that after a deed is obtained, the park board would seek to obtain the adjacent former railroad right-of-way to enlarge the park facilities.[1]

Mr. Benford further testified that the minutes of September 28, 1961, showed that a Mr. DeVries reported that Mr. Kerlikowske (one of the original platters) would like to sell the four lots adjacent to

[1] The park board did not understand that the township owned the subject "recreational area" by reason of the acceptance of the plat and that there was no need to obtain a deed.

the recreation area in the subdivision and that the board feels no action should be taken until the I-94 connector route is formally approved.

On September 27, .1966, the minutes reflected that a Mr. Saxton, a right-of-way agent for Michigan State Highway Department presented plans and a proposal of purchasing the township property in Kerley's subdivision which is dedicated to the public for $700 and that the park board informed Mr. Saxton that inasmuch as the township does not have the deed to the parcel located in Kerley's subdivision and the township attorney had indicated the township may not have jurisdiction over this property to present this proposal directly to the township board at their meeting.

Mr. Benford further testified that he lived in the neighborhood of this park and that the same was being used for kids to play sandlot baseball on an organized basis. He further testified that it was the intention of the park commission then and now to develop this as a neighborhood park. Mr. Benford testified on cross-examination that neighborhood parks are small areas of land left over after the subdividers have divided an area up into lots and that on this particular parcel the park commission had not spent any money and that there were no park facilities in terms of tables, chairs, fountains, or playground equipment but there is a sandlot baseball diamond and that some chicken wire had been put up for a backstop. He further testified that the backstop was actually located on Lot 13 of Kerley's Acres and that this was over 300 feet from the recreation area. He also testified that the entire recreation area was covered by a weed or flower known as purple vetch and that it grew to a depth of maybe a foot and was very thick until it was mowed. He further testified that the only use

that is made of it was by anybody that might wander over it just like any other vacant land in the county and that they hadn't prepared anything in that area. He further testified that the park board was somewhat skeptical, that they had no idea what this penetrator route was going to do, and that they were short of money so they don't develop a park area until they are sure of it.

The plat of Kerley's Acres No. 2 was admitted in evidence showing the "recreation area" in question. It also shows that between the public road and "recreation area" there are four privately owned lots. The plats of the subdivision on each side of the "recreation area" were introduced in evidence showing the property on three sides of the "recreation area" as privately owned. The fourth side of the "recreation area" was bordered by the former railroad right-of-way as Mr. Benford testified.

Petitioner's exhibit No. 3, an aerial view map of the area, was admitted showing the "recreation area" and a parcel of land larger than the subject "recreation area" that was owned by the petitioner and adjoining the public road and the "recreation area" in question, which was offered to the Township of St. Joseph in exchange for the dedicated "recreation area".

The ruling of the trial court that the "recreation area" had been dedicated to the public and accepted by the Township of St. Joseph is adequately supported by the evidence.

We now review the further ruling of the trial court that the Township of St. Joseph had abandoned the "recreation area". It is true that the "park area" was surrounded by private property and a former railroad right-of-way. It is also true that the township did not make any efforts to

condemn or purchase a right-of-way to the "park" and had not appropriated any money to be used on the "park area" or improving the land for its dedicated use. It was further shown that the "park" was never used in any systematic way by the public. In 1 Callaghan's Michigan Civil Jurisprudence, §§ 4, 5, pp 3, 4, it is stated:

"It is generally agreed that a fee simple interest in real property may not be abandoned, but that, in order to divest title to such an interest, other facts and circumstances must be shown, such as adverse possession, or a sale for nonpayment of taxes. *However, there may be an abandonment of an inchoate or lesser interest in realty,* such as an easement, railroad right of way, interest under a contract for the purchase of realty, homestead, highway, mining lease, or *land dedicated to a public use.[2] * * ***

"Abandonment is composed of two elements, namely, an intention to relinquish the right or property, but without intending to transfer title to any particular person, and the external act by which such intention is carried into effect. Both of these elements must concur. Intention alone is insufficient, and, conversely, nonuser alone is insufficient to show an abandonment—it must be accompanied by some act or circumstance showing an intention to relinquish the property." (Emphasis supplied.)

In the case of *Clark v Grand Rapids,* 334 Mich 646, 656; 55 NW2d 137, 142 (1952), it is stated:

"It was held that the burden of proof that the use as a park had been abandoned was on the party asserting it and was not sustained even when a hotel, grocery store, boat livery, powerhouse, and other buildings were built thereon when it was not shown that the use for

[2] *Clark v Grand Rapids,* 334 Mich 646; 55 NW2d 137 (1952); *Ford v Detroit,* 273 Mich 449, 263 NW 425 (1935); *Patrick v Young Men's Christian Assn of Kalamazoo,* 120 Mich 185; 79 NW 208 (1899); *Kent County Bd of Supervisors v Grand Rapids,* 61 Mich 144; 27 NW 888 (1886).

which the property was dedicated *had wholly failed.* In *Ford v Detroit,* 273 Mich 449 [263 NW 425 (1935)], we held that neither misuse nor nonuse will be sufficient to constitute an abandonment of land dedicated to public use so as to work a reverter to the dedicators."

Under the facts in this case we are constrained to rule that the Township of St. Joseph had not abandoned the "park area" and the purpose for which the property had been dedicated to the public as "recreation area" had not wholly failed. We further hold that the nonuse of the "park area" did not effect abandonment of the land so dedicated.

The petitioner argues that even though the dedicated land in question was accepted by St. Joseph Township and had not been abandoned, it was still subject to being condemned by the state under the general condemnation statute, MCLA 213.361 *et seq.;* MSA 8.261(1) *et seq.,* based upon the same facts relied on by the trial court in finding an abandonment of the dedicated land by the Township of St. Joseph.

For light on the law applicable to this particular issue we turn to 1 Nichols, Eminent Domain (3d ed), § 2.2, pp 203–211 wherein it is stated in part as follows:

"In the determination of the question whether or not property already devoted to a public use can be subjected to the process of eminent domain the primary factor to be considered is the character of the condemnor.

"If the sovereign, such as the state or the United States on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the *'res'* as public property, generally, has no inhibiting influence upon the exercise of the power.

"If, on the other hand, a condemnor to whom the

power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication. Such an acquisition cannot be effected under a general delegation of the power of eminent domain from the legislature, unless it can be clearly inferred from the nature and situation of the proposed work, and from the impracticability of constructing it without encroaching on land already used by the public, that the legislature intended to authorize such property to be taken.[3] The manner in which the property was originally acquired, whether by purchase, by eminent domain, or otherwise, has no bearing upon the operation of the general rule. The principle applies with equal effectiveness to property owned or held by the state even though not devoted to any public use. *Where, however, land is held for the public use, but is not actually so used or needed, it has been held that it is subject to condemnation like the property of private individuals in that it may be taken under general legislative authority without finding a special intent to authorize taking of public property.*"[4] (Emphasis supplied.)

[3] Michigan—*Detroit v Judge of Recorder's Court of Detroit,* 253 Mich 6; 234 NW 445 (1931).

*See City of Buffalo v Day,* 8 Misc 2d 14, 15; 162 NYS2d 817, 818 (1957), in which the court said:

"The defendants question the legality of this proceeding since this is a proceeding under the general statutes, the applicable provisions of the charter of the City of Buffalo, to condemn property already dedicated to a public use, that is a public park. They maintain that such property may be condemned only under a special statute authorizing such procedure. This contention is supported by numerous decisions." (Citations omitted.)

[4] United States—*Oregon-Washington R & Navigation Co v Wilkinson,* 188 F 363 (ED Wash, 1911); *Byrnes v Douglass,* 83 F 45 (CA 9, 1897).

Colorado—*Denver Power & Irrigation Co v Denver & R G R Co,* 30 Colo 204; 69 P 568 (1902).

Minnesota—*In re St Paul & N P R Co,* 34 Minn 227; 25 NW 345 (1885).

It is the general rule that property dedicated to public use may not be taken under a general eminent domain statute such as the one the highway commission bases its action herein on because it provides only for the acquisition of private property. However, there is an exception to this general rule when we have conditions such as are present in the instant case, *viz.,* (1) the property dedicated to the use of the public for "park purposes" has not been used by the public since it was dedicated and for a period of eight years; (2) no public money has been appropriated for or expended on the "park"; (3) there is no showing of a need for the dedicated "park" land over other land available for the same use including the land offered by the petitioner in exchange for the land in question; (4) there is only a possibility of future use by the public of the "park area"; and (5) St. Joseph Township has not sought a right-of-way to the "park area" by condemnation or purchase, although both avenues have been open for the full eight years since the land was dedicated.

We hold that although the trial court did not give the right reason for ruling that the subject property could be condemned in the instant eminent domain proceedings, still it was correct for the foregoing reasons given by this Court.

The judgment of the trial court is modified so that the ruling to the effect that the "recreation area" had been abandoned by the Township of St. Joseph is set aside, and in its place it is adjudged that the property in question is owned by the Township of St. Joseph, but that it may be taken by eminent domain.

The judgment of the trial court is hereby af-

Washington—*City of Tacoma v Washington,* 121 Wash 448; 209 P 700 (1922).

firmed as modified, and the matter is remanded for
further proceedings not inconsistent with this
opinion. No costs, a public question being involved.

All concurred.