*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL MAURICE LYNCH,

UNPUBLISHED
February 16, 2023

Plaintiff-Appellant,

v

No. 359437
Genesee Circuit Court
Family Division

LISA MARIE LYNCH,

LC No. 20-331146-DO

Defendant-Appellee.

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals by right from the judgment of separate maintenance and qualified domestic relations order (QDRO) entered by the trial court after a two-day evidentiary hearing. We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties were married in 1984 and have three adult children and no minor children. The parties separated in 2018, and defendant filed an action for separate maintenance. The parties reached a partial settlement agreement in 2019, and placed the agreement on the record in that action; however, there remained disputed issues regarding spousal support and property division. That action was dismissed for lack of progress in 2020.

Plaintiff filed a new complaint for separate maintenance in 2020. On the day he filed his complaint, plaintiff also filed a motion for temporary relief, requesting that the trial court set a spousal support amount and require the parties to inventory the personal property in their respective possession. After a hearing in August 2020, the trial court entered an order requiring the parties to exchange lists of personal property and ordering plaintiff to pay defendant $4,500 per month in temporary spousal support.

In September 2020, the parties filed cross-motions seeking, in relevant part, an award of attorney fees from the other party. The trial court took the matter under advisement.

-1-

The matter was referred to mediation in late 2020. In February 2021, defendant filed a motion to quash some of plaintiff's discovery requests and to enforce the spousal support order, and for attorney fees. After a hearing, the trial court again took the matter under advisement.

A two-day evidentiary hearing on the remaining unresolved issues began on February 26, 2021. At the beginning of the hearing, the trial court asked the parties to clarify the issues on which they had already reached agreement. The parties agreed that a partial settlement had been reached that could be placed on the record. Counsel for defendant stated as follows:

> [T]he parties have a couple of issues that they are able to stipulate that they agree on.
>
> The first is that [defendant] will receive $4500 permanent spousal support for the length of her life. Fifty percent --- she will get approximately $4141 through a QDRO with 50%--with her getting 50% of the pension[1] upon [plaintiff's] retirement and the difference, which will be approximately $360, will be done by an income withholding order . . . .

During his testimony, plaintiff agreed that there was an agreement on "the pension and the spousal support issue." Plaintiff also agreed with his counsel's statements that his pension benefits would be reduced if he took early retirement, but that in any event "the plan is still to pay [defendant] $4500 a month[.]" Defendant also testified and agreed that her understanding was that she would receive $4,500 per month for the length of her life, even if "her half of the pension" didn't equal that amount.

On cross-examination, plaintiff testified that in the event he was to predecease defendant, defendant would receive her spousal support "[t]hrough my pension, set up through my pension." Plaintiff clarified that he believed that if he retired, defendant would continue to receive one-half of his pension after his death, and that defendant would "get it full if [he] died before [he] retired." Plaintiff also testified that he was not aware of the full value of his pension or what his monthly benefit amounts would be on retirement, but that "[t]he pension would be more than enough to pay her her $4500." Plaintiff further argued that defendant should not be the beneficiary of his life insurance policy for this reason, so that he could leave his children an inheritance.

Regarding marital debt, plaintiff testified that he was the cosigner on a student loan for his daughter in the approximate amount of $5,800, and that he had recently become aware that defendant was the cosigner on four other student loans for the same daughter; the five loans totaled approximately $60,000. Defendant testified that she had cosigned on loans but that plaintiff had known about them generally and that their daughter's school was "expensive." Plaintiff and defendant agreed that defendant handled the household finances; defendant testified that plaintiff had never asked how much his daughter's school cost.

---

[1] Although the parties often referred to plaintiff's "pension" in the singular, plaintiff testified that he had vested interests in three pension plans because "that's the way the union set it up." For simplicity, we will continue to use the singular.

After the evidentiary hearing, the trial court entered a judgment of separate maintenance providing, relevant to this appeal, that defendant would be designated a surviving spouse with plaintiff's pension plans through a QDRO if required by the pension plans. The judgment further awarded one-half of the daughter's student loan debt to each party as a division of marital debt, with $25,000 of the debt to be paid from the shared proceeds of the sale of the marital home. The judgment also awarded defendant a .22-caliber handgun, amongst other personal property not at issue on appeal. The judgment ordered plaintiff to pay $3,500 in attorney fees to defendant.

After the judgment was entered, plaintiff filed a motion to stay proceedings pending his appeal, while defendant filed a motion to enforce the judgment. The trial court denied plaintiff's motion with respect to spousal support but granted it in all other respects, and denied defendant's motion. This appeal followed.

## II. SPOUSAL SUPPORT

Plaintiff argues that the trial court erred by ordering that defendant receive surviving-spouse benefits from his pension. We disagree. We review a trial court's property division in a domestic relations case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts. *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). A settlement agreement is a contract, the interpretation of which we review de novo. *Kloain v Domino's Pizza LLC*, 273 Mich 449, 452; 733 NW2d 766 (2006).

When a property division is established by agreement of the parties, "a court's task is to determine the parties' intent as manifested in their agreement through application of principles of contract construction." *Neville v Neville*, 295 Mich App 460, 471; 812 NW2d 816 (2012) (citation omitted). A trial court's "treatment and distribution of pension benefits may vary." *Id*. There is no single method for valuing a pension plan, regardless of whether the property division is determined by the parties or the trial court. *Id*.

Plaintiff argues that the trial court improperly modified the parties' settlement agreement by ordering that defendant be designated a surviving spouse with respect to plaintiff's pension plans. We disagree. The post-hearing property division order reflects that the parties had agreed (before the hearing) that defendant "will receive $4,500 in spousal support either through a QDRO or income withholding." Further, the record reflects that the parties agreed that defendant would have a 50% interest in plaintiff's pension, that plaintiff would make up the difference between the monthly amount of benefits paid to defendant and defendant's $4,500 per month spousal support by other means, and that spousal support was intended to last for the length of defendant's life. Additionally, plaintiff stated his understanding that if he chose to retire early with respect to one or more of his pension plans, the spousal support amount owed to defendant would not change, despite a change in the benefits received by plaintiff. Moreover, plaintiff stated his understanding that, if he were to predecease defendant, defendant would receive her spousal support through his pension after he retired, and that she would be the designated beneficiary on his pension and "get the whole pension" if plaintiff died before retirement. It was for that reason, in fact, that plaintiff argued that defendant should not be the beneficiary on his life insurance policy, because "[t]he pension would be more than enough to pay her her $4500."

In sum, the record is clear that plaintiff agreed that (1) defendant would receive a one-half-interest in his pension, (2) the amount of spousal support he owed *in toto* was not dependent on the specific monthly benefit he would receive upon retirement, and (3) defendant would continue to receive benefits from his pension if he predeceased her after he retired. The trial court's order that defendant be designated a surviving spouse was an expedient way of implementing the parties' agreement. *Neville*, 295 Mich App at 472. Although plaintiff argues that the trial court erred by not awarding defendant a present 50-percent interest in his pension, a surviving-spouse benefit *is* an interest in a pension plan. See *Pickering v Pickering*, 268 Mich App 1, 8; 706 NW2d 835 (2005) (noting that "QDROs routinely contain provisions designating an ex-spouse to survivorship rights in a former spouse's pension). Further, the parties clearly agreed that spousal support would continue for the length of defendant's life and would primarily come from plaintiff's pension benefits; it is difficult to see how such an agreement would be carried out *without* a surviving-spouse designation. We are not convinced that the trial court's decision to award the pension interest through a surviving-spouse designation was not fair and equitable in light of the facts of this case. *Olson*, 256 Mich App at 622.

Furthermore, the mere fact that plaintiff claims to have been unaware that such a designation would reduce the monthly benefits paid to him is not a mutual mistake sufficient to warrant rescission of the settlement agreement. A mutual mistake must relate to a basic assumption upon which the contract is made. See *Lenawee Bd of Health v Messerly*, 417 Mich 17, 26-29; 331 NW2d 203 (1982). It is clear from the record that the agreement regarding spousal support was not fundamentally based on the value of the benefits to be received by plaintiff upon retirement. Moreover, any mistake was not mutual; plaintiff was, or could have been, in possession of all relevant information concerning his pension benefit amounts. The trial court's order was consistent with the settlement agreement, and plaintiff has not shown any reason to rescind or void that agreement. *Kloain*, 273 Mich at 452.

## III. STUDENT LOAN DEBT

Plaintiff also argues that the trial court erred by equally dividing the parties' liability as cosigners of their daughter's student loans, because plaintiff was not aware that defendant had co-signed for several of the loans in question. We disagree.

At the evidentiary hearing, plaintiff admitted that he had become aware of the other loans that defendant had cosigned with their daughter, although he stated that he had only been aware of them "since the divorce." Plaintiff later clarified that he was "told that there was $60,000 loan [sic] in the first case," i.e., the action for separate maintenance filed by defendant in 2018. Plaintiff also testified that defendant had taken care of all the household finances for the entire length of the marriage. In short, although plaintiff argues that defendant concealed the student loan debt from him, it appears from the record that defendant managed the parties' finances with little or no oversight from plaintiff. The fact that plaintiff only became aware of the extent of the debt when domestic relations proceedings began does not mean the debt was concealed from him; rather, it seems that he simply left the management of the household money, including the use of credit and the incurring of debt, to defendant. Further, their daughter's student loan debt was the only debt divided by the trial court, the debt was divided equally, and a significant portion of the debt was ordered to be paid from the proceeds of the sale of the marital home, which were also to be equally

divided. We are not convinced that the trial court's decision was unfair or inequitable under the circumstances. *Olson*, 256 Mich App at 622.

## IV. FIREARM

Plaintiff also argues that the trial court erred by awarding defendant possession of a single firearm out of more than 20 owned by plaintiff. We disagree. We note that both parties' arguments concerning the other's mental health and ability to lawfully own a firearm are far outside the scope of this appeal, being matters for law enforcement in which no initial determination has been made, and we decline to consider them. See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Absent those arguments, the record reveals no reason why the trial court's award of one firearm to defendant was unfair or inequitable, and we accordingly find no error. *Olson*, 256 Mich App at 622.

## V. ATTORNEY FEES

Plaintiff also argues that the trial court erred by awarding defendant attorney fees without making the necessary findings required before entering such an award. We agree. We review for an abuse of discretion a trial court's decision to award attorney fees in domestic relations cases. *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007).

MCR 3.206(D) permits a party to a domestic relations action to request that the trial court order the other party to pay all or part of their attorney fees, and provides in relevant part:

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

"The party requesting the attorney fees has the burden of showing facts sufficient to justify the award." *Borowsky*, 273 Mich App at 687. This may be done by showing that financial assistance is necessary to enable the party to defend or prosecute the action, or that a party has been forced to incur legal fees as a result of the other party's unreasonable conduct. *Id*.

In the property division order, the trial court only cited MCR 3.206(D)(2), and noted that a previous action had been dismissed for lack of progress and that there had been "multiple pretrials and settlement conferences" and a two-day evidentiary hearing in the current case. The trial court made no findings concerning either party's ability to pay or whether a party had incurred expenses as a result of the other's unreasonable conduct; indeed, the trial court did not even indicate whether its award was based on MCR 3.206(D)(2)(a), (b), or both. Further, while the record indicates that the parties had substantial disputes over the division of personal property (which at one point caused the trial court to observe that it had never had a personal property division that had "gotten

so out of control" as it had in this case), the record does not reveal that the trial court made specific findings concerning either plaintiff's conduct or defendant's inability to pay. We therefore conclude that the trial court abused its discretion by awarding defendant attorney fees in the judgment of separate maintenance, and we remand for the trial court, if it still wishes to make such an award, to make the requisite findings under the court rule. *Borowsky*, 273 Mich App at 687.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron